**Curtis Gene CRUMLEY, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–90–0638.

Court of Criminal Appeals of Oklahoma.

July 11, 1991.

Joseph F. Clark, Jr., Leslie R. Earl, Jr., Tulsa, for appellant.

Robert H. Henry, Atty. Gen., Steven S. Kerr, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

LANE, Presiding Judge:

Appellant, Curtis Gene Crumley, was convicted of First Degree Murder after a trial by jury in Atoka County District Court, Case No. CRF-89-25. Although the death penalty was sought by the State, the jury recommended that Appellant be sentenced to life in the custody of the Oklahoma Department of Corrections. The trial court sentenced accordingly. That judgment and sentence is the subject of the present appeal. Appellant claims that he is entitled to relief from this Court for the following reasons; the prosecutor's decision to seek the death penalty prevented him from receiving a fair trial, the trial court erred when it refused to instruct the jury that it had the option of returning a verdict of Second Degree Murder, that improper rebuttal testimony was allowed in the first stage of the trial and that improper evidence of prior unrelated acts was admitted in the first stage of the trial. We disagree and affirm the conviction.

Regina Christine Cook (Chris) was killed at the end of a weekend trip to the lake with her boyfriend, Appellant, and several other friends. Chris and Appellant had argued several times throughout the weekend and Chris had told Appellant that the relationship was over just before she was killed. Chris told Appellant that she would drive him home, but then never wanted to see him again.

While the two were loading their possessions into the car, Appellant took out his shotgun. At trial, he claimed that he was examining it to see if he had damaged it by dropping it on the way to the car. Chris and Appellant continued to argue while at the car. Some comments were made concerning the gun and Appellant threatened to "click" it. During the argument, Chris was shot in the face. The shell entered her jaw and went up through her skull into her brain.

Evidence at trial indicated that Appellant and Chris argued frequently. One witness testified that when Chris had broken up with Appellant about two weeks prior to

her death, Appellant had said that he "ought to just kill the bitch." The couple reconciled the next day and Appellant moved back into Chris' parents' house where he had been staying.

■ As his first assignment of error, Appellant claims that the prosecutor committed great misconduct when he chose to seek the death penalty against him. He claims that the prosecutor's sole motive was to stack the jury with advocates of the death penalty with the hope that persons in favor of the death penalty would be more likely to convict in general. We do not take allegations like these lightly, however, Appellant has provided nothing in support of this particular portion of his theory except unsubstantiated speculation.

His argument is that the evidence against him was so clearly devoid of any of the necessary aggravating factors that improper motivation is indicated. We disagree. Appellant provides no instances or examples of conduct by the prosecutor which would even remotely suggest that there has been any selective enforcement of the law against him at all let alone any such enforcement based upon any arbitrary factor as has been required by this Court in order to prove a denial of a guaranteed constitutional protection. *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 505–06, 7 L.Ed.2d 446 (1962). Prosecutors are presumed by law to act in good faith when determining which crimes to prosecute and which punishments to seek. *United States v. Blitstein,* 626 F.2d 774 (10th Cir.1980); *United States v. Bennett,* 539 F.2d 45 (10th Cir.1976), *cert. denied,* 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976).

In the *Blitstein* case, the Tenth Circuit Court held:

It is the obligation of a criminal defendant to demonstrate that the governments' prosecution of him was based upon impermissible discriminatory grounds such as race, religion or his exercise of first amendment rights to free speech.

*Id.* at 782.

In this case, Appellant claims that there was clearly no evidence to support the ag-

gravating circumstances alleged, thus, the prosecutor should be presumed to have acted maliciously against him. A more specific criticism, that prosecutors are granted an unconstitutional amount of discretion in the process of deciding when the penalty is to be sought, has been addressed and rejected by the Supreme Court. In *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the Court considered the role of prosecutorial discretion:

> First, the petitioner focuses on the opportunity for discretionary actions that are inherent in the processing of any murder case under Georgia law. He notes that the state prosecutor has unfettered authority to select those persons whom he wishes to prosecute for a capital offense and to plea bargain with them ...
>
> The existence of these discretionary stages is not determinative of the issues before us. At each of these stages an actor in the criminal justice system makes a decision which may remove a defendant from consideration as a candidate for the death penalty. *Furman,* in contrast, dealt with the decision to impose the death sentence on a specific individual who had been convicted of a capital offense. Nothing in any of our cases suggested that the decision to afford an individual defendant mercy violates the Constitution. *Furman* held only that in order to minimize the risk that the death penalty would be imposed on a capriciously selected group of offenders, the decision to impose it had to be guided by standards so that the sentencing authority would focus on the particularized circumstances of the crime and the defendant.

*Id.* 428 U.S. at 199, 96 S.Ct. at 2937.

This point is made even more clearly in the concurring opinion written by Mr. Justice White:

> Absent facts to the contrary, it cannot be assumed that the prosecutors will be motivated in their charging decision by factors other than the strength of their case and the likelihood that a jury would impose the death penalty if it convicts.... Thus, defendants will escape

the death penalty through prosecutorial charging decisions only because the offense is not sufficiently serious; or because the evidence is insufficiently strong....

*Id.* at 225–26, 96 S.Ct. at 2949.

In the present case, the State alleged the existence of two aggravating circumstances, that the murder was heinous, atrocious or cruel and that there existed a probability that the defendant would commit further criminal acts of violence that would constitute a continuing threat to society. At a pretrial hearing following the preliminary examination, the trial court, at Appellant's request, ruled that there was insufficient evidence to support the heinous, atrocious or cruel circumstance and that it would not be submitted to the jury. Based solely on the evidence introduced at preliminary, the trial court agreed that the "continuing threat" aggravator, based on evidence that Appellant became violent and unpredictable when drinking, presented a question of fact for the jury. Even assuming that we require independent justification for a prosecutor's decision to seek the death penalty, which we do not, the trial court's decision to allow the Bill of Particulars to move forward after challenge would satisfy any such requirement. There is no error presented here.

■ Appellant next argues that the trial court committed error when it refused to give his requested instruction on Second Degree Murder. Appellant claims that the evidence indicated that the killing could have occurred through his reckless disregard for human life, evidenced by his handling of a loaded weapon.

We have long held that the giving of instructions on lesser included offenses is within the sound discretion of the trial court and we will not intervene absent an abuse of discretion. *Rawlings v. State,* 740 P.2d 153 (Okl.Cr.1987.) Instruction on lesser offenses is only required when there is evidence to support the finding of the offense. *Bennett v. State,* 743 P.2d 1096 (Okl.Cr.1987).

It is important to note at this point that Appellant's defense throughout the pro-

ceedings was that Chris' death was an accident. We have previously held that when a defendant proceeds to trial urging the jury to find that only an accident had occurred, an instruction on Second Degree Murder is not warranted. In *Hill v. State*, 672 P.2d 308, 312 (Okl.Cr.1983), we explained that an accidental killing would not support a finding that the killer had a depraved mind. The evidence in this case supported a finding either that Appellant had killed Chris with malice aforethought or that the shooting was in fact accidental. No middle ground, such as Second Degree Murder, could reasonably be found on the evidence supported at trial. It was not error to refuse the instruction.

■ In his third proposition of error, Appellant again accuses the prosecutor of improper motives, this time in the calling of a rebuttal witness at the close of Appellant's first stage case-in-chief. Specifically, Appellant alleges that the State called the victim's father, David Cook, solely for the purpose of inflaming the passions of the jury. Examination of the record before us does not indicate any purpose other than a legitimate attempt at impeachment of Appellant's credibility as a witness.

Appellant testified concerning his living arrangements with Chris. He also testified about a previous fight with Chris which lead to his being asked to leave the house by David Cook. We have examined the testimony of Cook and find that rather than being particularly harmful to Appellant's position, it is substantially in conformity with the testimony of Appellant. Appellant argues that the testimony was offered merely as "subterfuge" to enable the State to have the last word. We disagree and find that Cook's testimony concerning the prior argument between Appellant and his daughter was no more damaging than the same testimony from Appellant. There is no reason presented for us to find that any error occurred when the State called Cook as a witness.

■ In proposition four, Appellant directs our attention to the redirect examination of one of Appellant's friends who witnessed the murder. The witness was asked whether or not Appellant became a violent person when he was drinking. When the prosecutor attempted to go into specific instances of conduct, a defense objection was sustained. We do not find that the testimony of the witness constituted error in light of the cross-examination of the same witness by the defense.

During the questioning by the defense, the witness was asked about Appellant's tendency to be loud when he drank. Counsel also inquired into Chris' behavior when drinking. Our evidence code provides in 12 O.S.1990, § 2404 that "evidence of a pertinent trait of [a defendant's] character offered by an accused or by the prosecution" is admissible once that issue has been raised by the defendant. The prosecutor's questions on re-direct were proper inquiry as to the witness' opinion under 12 O.S.1981, § 2405 in light of the defense cross-examination concerning Appellant's drinking demeanor. *Holt v. State*, 774 P.2d 476 (Okl.Cr.1989). The defense objection to testimony concerning specific instances of conduct, not authorized by Section 2405, was sustained, thus preventing error from occurring.

After review of the errors alleged by Appellant, we are unable to conclude that any error has occurred which requires either reversal or modification of Appellant's sentence. Accordingly, the judgment and sentence is AFFIRMED.