Benito Jerome BOWIE, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–88–369.

Court of Criminal Appeals of Oklahoma.

Jan. 12, 1995.

Rehearing Granted in Part and
Denied in Part Dec. 19, 1995.

Merle Gile, Oklahoma City (at trial) and Terry J. Hull, Asst. Appellate Public Defender (on appeal), Norman, for appellant.

Robert H. Macy, Dist. Atty., Don Deason (at trial) and Susan Brimer Loving, Atty. Gen. of Oklahoma and David Walling, Asst. Atty. Gen. (on appeal), Oklahoma City, for appellee.

## OPINION

LANE, Judge:

Appellant, Benito Jerome Bowie, was convicted of First Degree Murder in the District Court of Oklahoma County, Case No. CRF–87–6621, the Honorable Joe Cannon presiding. Following a two stage proceeding, the jury found three aggravating circumstances and sentenced Appellant to death. He has brought the instant appeal challenging both the conviction and the sentence. Because error exists which requires vacation and remand of the sentencing portion of the trial, we will address only the allegations with respect to the first stage of the trial and the determinative proposition as to the second stage.

### Facts

Appellant was convicted for instigating the death of Eric Douglas Dunn by enticing Dexter Tyrone McDade to commit the murder. Appellant was the head of a sophisticated drug distribution ring. McDade worked in Appellant's organization and was eager to please Appellant. He testified at trial that he understood that if he did as Appellant asked, he would be rewarded. Dunn was

involved with another drug organization run by Appellant's brother, Claude.

On the night the murder occurred, Dunn had an argument with another one of Appellant's employees, Robert Taylor, at a party given by Appellant's cousin, Ricky Rideau. Dunn eventually hit Taylor several times, cutting Taylor's mouth. When the two drew guns on one another, others at the party broke up the fight. Although Dunn left the house, he called back several times during the evening.

When Appellant was informed of the fight, he was incensed that one of his "men" had been hurt. Appellant called Roger Britt and Gonzales Zale and asked them to come to the party. Brit was specifically requested to bring his gun and two packages of cocaine.

After these two men arrived at Rideau's house, Appellant, Britt, Gonzales, McDade, Taylor, Rideau and Claude Bowie had a meeting in the basement. Appellant outlined a plan whereby Dunn would be called back to the house and then killed. He told the others that the cocaine would be planted on the body. When the others opposed the plan, the meeting broke up. Appellant, however; spoke to McDade in private, telling him to go ahead and that he was to be the triggerman.

When the group went back upstairs, Dunn had returned to the party. He was led into a bedroom, ostensibly to make up with Taylor. Appellant then cursed at him and told him "he didn't appreciate him hitting his boy." When Dunn tried to get out of the room, McDade fired two rounds, hitting Dunn in the back and leg.

McDade left Oklahoma City for Okmulgee, eventually going to California. Testimony at trial established that he received between $15,000.00 and $20,000.00 dollars from Appellant at various times through friends.

## Pretrial Issues

In his first proposition of error, Appellant claims that his constitutional right to a speedy trial was violated by the forty (40) month delay between the time of the crime and the commencement of the trial. Appellant was first charged with this crime on December 28, 1984. When the case came on for preliminary examination, it was dismissed at the request of the State. The charges were not refiled until November 20, 1987. The case went to trial on April 18, 1988.

The right to a speedy trial is a right guaranteed by the Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteen Amendment. It is also a right enumerated in the Oklahoma Constitution. Okla. Const. Art. 2, § 20.

The Supreme Court has recognized the unique nature of the right to a speedy trial. A violation of the right, while potentially prejudicial to a criminal defendant, may just as often be beneficial. Accordingly, the reasons for the delay must be closely examined. *Barker v. Wingo*, 407 U.S. 514, 521, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1972).

Our analysis of the facts in the present case is directed by *United States v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). In that case, the Supreme Court held "the Speedy Trial Clause has no application after the Government, acting in good faith, formally drops charges." *Id.* at 7, 102 S.Ct. at 1501, 71 L.Ed.2d at 703. The reasoning was based on the acknowledgement that:

> [t]he Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by the passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

*Id.* at 8, 102 S.Ct. at 1502, 71 L.Ed.2d at 704.

Based on the foregoing, our focus in terms of the measurement of the length of time to which Speedy Trial considerations must be applied is the period between the second filing of the charge and the time the case actually came to trial; a period of only

five months. We can reach only one conclusion; based on the short length of time involved between the filing of the charges and the start of the trial, Appellant received a speedy trial.

In his next allegation, Appellant claims that his rights against double jeopardy were violated when he was tried and convicted for this crime, the details of which were used as evidence in aggravation in a different trial. Alternatively, he claims that principals of collateral estoppel should have barred the subsequent proceeding. We disagree.

In January of 1988, Appellant was convicted for the murder of Melvin Traylor. Although the State sought the death penalty, the jury failed to find the existence of the two alleged aggravating factors and recommended that Appellant be sentenced to a term of life imprisonment. Evidence of the crime underlying the conviction in the present case was introduced in the second stage of the Traylor murder trial.

■ At the outset, it is important to distinguish the manner in which evidence of the present crime was used in that previous case. Evidence of the murder of Eric Dunn was presented to the Traylor jury not to determine Appellant's guilt of the crime involving Traylor (that portion of the trial was over), but to support the State's theory that Appellant constituted a continuing threat to society[1]. The subsequent determination of guilt of the substantive crime is not a violation of double jeopardy.

■ In support of his argument that the refusal of the jury to recommend the death penalty for the Traylor murder should be considered an acquittal for the murder of Dunn, Appellant relies on *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). We agree with the Supreme Court's subsequent decision in *Poland v. Arizona*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986) that the holding of *Bullington* does not compel this result, or even apply in this situation.

In *Poland,* the Court recognized that *Bullington* offers protection only against a second attempt to obtain the death penalty for the same crime, following its specific rejection by the jury, in the event a retrial for the crime is ordered. It noted that "[a]ggravating circumstances are not separate penalties or offenses but are 'standards to guide the making of [the] choice' between the alternative verdicts of death and life imprisonment." *Id.* at 156, 106 S.Ct. at 1755, 90 L.Ed.2d at 132. Given the distinct difference between the purpose for which the evidence of Dunn's murder was used in the Traylor murder trial as compared to the purpose of the trial in the instant case, we cannot conclude that the use of the evidence in the former trial should have resulted in the dismissal of the present case.

Neither do we find that principles of collateral estoppel should affect the veracity of Appellant's conviction. This Court has held, as has the United States Supreme Court, that a subsequent prosecution for a connected charge is barred on the basis of collateral estoppel only in cases where the State has elected to use substantive evidence of the second crime as proof of *guilt* in the trial on the first crime. *Mayhan v. State,* 696 P.2d 1044, 1045 (Okl.Cr.1985); *Byrne v. State,* 620 P.2d 1328, 1331 (Okl.Cr.1980); *Chaney v. State,* 612 P.2d 269, 282 (Okl.Cr.1980). *See also Grady v. Corbin,* 495 U.S. 508, 520, 110 S.Ct. 2084, 2093, 109 L.Ed.2d 548 (1990); *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Because the evidence in question was not used in this manner in the Traylor case, we do not find the collateral estoppel doctrine to be applicable.

■ In his twelfth proposition of error, Appellant claims that he was denied his right to counsel at the preliminary examination on this charge. Appellant admits in his brief that the magistrate questioned him extensively and warned him in detail in connection with his request to represent himself. When Appellant expressed his desire to have his counsel appointed as co-counsel to assist him in his defense of himself, the court denied his

---

1. The State also alleged that the murder of Melvin Traylor had been committed for remunera- tion.

request, appointing only standby counsel, the effect of which was also explained in detail. Appellant chose to represent himself. There is no right to appear through both appointed counsel and pro se. The decision of the magistrate denying Appellant's request for dual representation was correct and Appellant's decision was his own. There is no error presented here. *McKaskle v. Wiggins,* 465 U.S. 168, 183, 104 S.Ct. 944, 953, 79 L.Ed.2d 122 (1984). *See also Donald v. State,* 716 P.2d 681 (Okl.Cr.1986).

■ Appellant also challenges whether the State properly established the existence of racially neutral reasons to explain the dismissal of two black veniremen. In the case of Christina Spicer, the trial court agreed with the State's concern that the potential juror laughed when questioned about the death penalty. The trial court indicated, "I watched her and I listened to her and I thought she was quite evasive and flippant and (sic) the death penalty."

The same was true with respect to the removal of James Mason. When questioned about the case, Mason told that court that he had in fact formed an opinion in the case. Defense counsel was silent when asked for suggestions as to how to proceed. Mason was removed for cause by the court. We do not find that the actions of the State in any manner compromised the dictates of either *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) or *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

Appellant alleges that the death penalty was sought in this case in a vindictive manner. We considered this same argument in *Crumley v. State,* 815 P.2d 676 (Okl.Cr.1991). In that case, we held prosecutors are presumed by law to act in good faith when determining which crimes to prosecute and which punishments to seek. *United States v. Blitstein,* 626 F.2d 774 (10th Cir.1980); *United States v. Bennett,* 539 F.2d 45 (10th Cir. 1976) *cert. denied,* 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976).

In this case, as was true in *Crumley,* the State alleged the existence of two aggravating circumstances, both of which were supported by the evidence. Appellant fails to establish any substantial evidence for his claim of vindictiveness and provides no legal basis upon which this Court should conclude that bad faith was involved in the decision to seek the death penalty. There is no error presented here.

## Trial Issues

■ In his third proposition, Appellant claims that the trial court erred when it failed to instruct the jury that Roger Britt and Robert Taylor were accomplices as a matter of law. While it is true that the trial court did not instruct as Appellant now requests, it did instruct the jury that it was to determine whether the two witnesses were in fact accomplices. The test established by this Court to be used in the evaluation of whether a witness is an accomplice is very simple; the witness is an accomplice when "he could be indicted for the offense for which the accused is on trial." *Gray v. State,* 585 P.2d 357 (Okl.Cr.1978); *Motsenbocker v. State,* 29 Okla.Crim. 305, 233 P. 487 (1924). If the evidence is subject to interpretation otherwise, then the jury, rather than the court, must determine whether the witness is an accomplice. *Frye v. State,* 606 P.2d 599, 606 (Okl.Cr.1980).

■ In any event, we find that Roger Britt was not an accomplice to the crime. The mere fact that an Information had been filed against him is not of itself dispositive of whether Britt was legally an accomplice. We find that under the evidence presented at trial, Britt could not be indicted for the crime of murder in that there is no evidence that he intended to participate in the crime or even that he knew it was going to occur. This conclusion is also supported by the fact that the Information against Britt was dismissed for lack of evidence and not refiled.

Britt's testimony established that he went to the Rideau house after being called by Appellant. A meeting was held where Appellant proposed to kill Dunn. During the discussion, Britt attempted to dissuade Appellant from committing the crime at that time. When the discussion ended, Britt believed that he had been successful in changing Appellant's plans. Britt's testimony is

sufficient circumstantial evidence to corroborate the testimony of the other witnesses, even assuming that all the others were found to be accomplices[2]. *Hartness v. State,* 760 P.2d 193, 194 (Okl.Cr.1988); *Fleming v. State,* 760 P.2d 208 (Okl.Cr.1988).

■ The next allegation raised for our consideration concerns the use by the State of evidence of Appellant's "employment" as a drug dealer. The contention that the evidence was improperly admitted may be summarily dispensed since evidence of Appellant's drug trafficking was admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident" as contemplated by 12 O.S.1981, § 2404(B). *See also Bowie v. State,* 816 P.2d 1143 (Okl.Cr.1991). The evidence of drug use and sales was involved in the motive for this crime as well as in the planning of the crime. *Reyes v. State,* 751 P.2d 1081 (Okl.Cr.1988). There is no error identified here.

In his fifth proposition, Appellant claims that misconduct by the prosecutor interfered with his right to a fair trial. Although Appellant alleges misconduct occurred in both stages of the trial, we will address only those allegations with respect to the first stage proceedings. At the outset, we feel compelled to note that the majority of the comments alleged by Appellant to be error are no more than statements of fact concerning the evidence which Appellant now seeks to twist into some sort of evil purpose by the prosecutor[3]. The vast majority of the comments identified here as objectionable passed without objection at trial. Failure to object waives all but fundamental error. *Pickens v. State,* 850 P.2d 328 (Okl.Cr.1993). We do not find that any of the comments by the prosecutor with respect to the first stage proceedings were so egregious or so outside the scope of the evidence as to require relief from this court.

■ We also find no merit to the allegations contained in the sixth proposition of Appellant's appeal, that he was improperly prevented from expressing his remorse for having been involved in drug dealing in the first stage of the trial. The trial court properly ruled that this evidence was relevant only to the potential mitigation of punishment, not to a determination of guilt or innocence for the murder of Dunn. *See Cartwright v. State,* 695 P.2d 548, 553 (Okl.Cr. 1985). The fact that Appellant subsequently chose not to introduce this evidence in the second stage does not make it any more relevant in the first stage.

■ The next issue raised concerns Appellant's request for a continuance following the close of the State's case in chief, notwithstanding the previous announcement of "ready" at the beginning of the trial. Appellant requested the continuance because he desired the presence of several out of state witnesses. We find that any problem with the attendance of the witnesses was caused by the conduct of Appellant, who while representing himself, delayed the possible arrival of several witnesses by failing to issue subpoenas or take other steps to obtain the presence of those witnesses. Because the problem identified by Appellant stems directly from his own conduct, we cannot say that the trial court abused its discretion in denying the request.

On February 10, 1988, an Order appointing counsel was entered into the record. On February 25, Appellant announced to the court that he wished to proceed pro se, which he did for a time, before again changing his mind. Counsel was again appointed following arraignment, however, Appellant again moved to dismiss his counsel on April 8. On April 18, the case was called for trial. Appellant was represented by counsel, who did not move for a continuance, although the court was notified that problems existed with transporting several witnesses incarcerated in out of state facilities. The trial court found that the actions of Appellant with respect to retention of counsel had caused any problem and ordered the trial to start. We

**2.** Having found sufficient evidence to corroborate the testimony of the others, we need not consider whether any of the other witnesses were or were not accomplices.

**3.** For instance, Appellant seeks to establish that the prosecutors reference to the age of the victim was an improper appeal to sympathy.

agree with the findings of Judge Cannon and do not find that reversible error occurred.

Based on our rejection of the allegations discussed above, we find that there is no error which requires us to reverse Appellant's conviction. We do, however; find error in the second stage which requires remand for a new sentencing.

### Second Stage

 As was the case in *Hain v. State*, 852 P.2d 744 (Okl.Cr.1993); *Salazar v. State*, 859 P.2d 517 (Okl.Cr.1993); and *Allen v. State*, 821 P.2d 371 (Okl.Cr.1991), the trial in the present case was conducted after the effective date of 21 O.S.Supp.1990, § 701.13(E), which added the additional punishment of life without parole to the sentencer's consideration of punishment options in capital cases. In all of these cases, we found that error occurred when the jury was not instructed on the life without parole option, notwithstanding the fact the statute was not in effect at the time the crime was committed. Based on the analysis found in the above referenced cases, we find that the second stage of the present case must be reversed and remanded for a new sentencing trial.

JOHNSON, P.J., and CHAPEL, V.P.J., and STRUBHAR, J., concurs.

LUMPKIN, J., concurs in part/dissents in part.

LUMPKIN, Judge, concurring in part and dissenting in part:

I concur in the results reached by the Court in affirming the conviction for First Degree Murder in this case. I agree with the Court's determination that principles of collateral estoppel do not bar the prosecution of this charge, however, I do not join in the Court's statement of the context of the application of the principle. *See White v. State, ex rel Hopper*, 821 P.2d 378, 382 (Okl.Cr. 1991) (Lumpkin, V.P.J., Concur in Results); *United States v. Dixon*, 509 U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993); *United States v. Felix*, 503 U.S. 378, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992); *Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990).

I continue to dissent to the Court's retroactive application of the Life Without Parole sentencing option as set out in my separate votes in *Hain v. State*, 852 P.2d 744 (Okl.Cr. 1993) and *Salazar v. State*, 859 P.2d 517 (Okl.Cr.1993).