Albert Wesley BROWN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–84–94.

Court of Criminal Appeals of Oklahoma.

March 15, 1988.

Jackson M. Zanerhaft, Howard, LaSorsa & Widdows, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Lana Cohlmia, Legal Intern, Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

The appellant, Albert Wesley Brown, was convicted in the District Court of Wagoner County, Case No. CRF–82–92, of Murder in the First Degree. The trial court sentenced the appellant, in accord with the jury's verdict, to life imprisonment. From this judgment and sentence, the appellant has perfected his appeal to this Court. We affirm.

An opinion was rendered in this matter on August 31, 1987. Subsequently on October 28, 1987, an order was entered withdrawing the opinion. This opinion is filed in lieu of the one withdrawn. *See Brown v. State*, 744 P.2d 218 (Okl.Cr.1987).

In the late morning of October 31, 1981, the dead body of Earl Taylor was found floating near the shore of Jackson Bay on Fort Gibson Lake. He had been gagged with a red shop cloth. His hands were tied

behind his back. His body was weighted down by a large rock. The following morning, before the body was identified, Earl Taylor's father, Joe Taylor, noticed that his son's house lights had been on all day Saturday through Sunday morning. He called the police. When the officers arrived, they found a window had been pried open and the victim's house had been ransacked.

The appellant's girlfriend, Stanna Joe Hale, loaned her car to the appellant at about 7:30 a.m. on Saturday, October 31. When the appellant returned her car in the middle of that afternoon, one of its tires had been replaced with the temporary spare tire.

Kenneth Ede, a chemist with the Oklahoma State Bureau of Investigation, testified that hair found on the gag in the victim's mouth was consistent with the appellant's head hair; that hair found in the trunk of Ms. Hale's car was consistent with the victim's head hair; that fibers found on the window of the victim's home were consistent with fibers from appellant's shirt; and that a soil sample taken from the spare tire of Ms. Hale's car was consistent with the soil near the Gray Oaks Road which runs by Jackson Bay. Mr. Ede further testified that according to scientific studies conducted by Dr. Gaudett in Canada the probability of finding two people having head hair consistent with each other was one in 4,500. Mr. Ede testified that his examination revealed the victim used a hair coloring agent like Grecian Formula. He testified that the fact that the victim colored his hair decreased the probability of finding another person with head hair consistent with that of the victim, but to what extent he did not know. Defense counsel conducted vigorous cross-examination.

■ For his first assignment of error appellant contends that Mr. Ede's testimony as to the statistical probability of finding two persons with consistent head hair should not have been admitted into evidence. Appellant claims the State failed to present an adequate foundation for this evidence, and that its prejudicial effect outweighs its probative value.

Appellant does not challenge the admissibility of the microscopic hair comparison evidence. *See Driskell v. State,* 659 P.2d 343 (Okl.Cr.1983). Nor does he contend Mr. Ede was wrong in his conclusions as to the likelihood that the head hair found on the gag in the victim's mouth was his and that the hair found in the trunk of Ms. Hale's car was from the victim. Indeed, appellant argues only that Mr. Ede should not have been allowed to express his conclusion in terms of mathematical probability.

■ Statistical information for which a proper foundation is laid is admissible if it makes the existence of a consequential fact more or less probable. *Plunkett v. State,* 719 P.2d 834, 839 (Okl.Cr.1986). In holding that evidence of statistical probability for which a proper foundation is laid is admissible in a criminal trial, we are acutely aware of the serious danger that the evidence will be used improperly. *See People v. Collins,* 68 Cal.2d. 319, 66 Cal.Rptr. 497, 438 P.2d 33, 36 A.L.R.3d 1176 (1968); *State v. Sneed,* 76 N.M. 349, 414 P.2d 858 (1966), *United States v. Massey,* 594 F.2d 676 (8th Cir.1979).

In addition to possible misuse, there is also the very real danger that the probability evidence may have an undue psychological impact on the trier of fact. As one court has observed, "Mathematics, a veritable sorcerer in our computerized society, while assisting the trier of fact in the search for truth, must not cast a spell over him." *People v. Collins,* 66 Cal.Rptr. at 497, 438 P.2d at 33. This inherent danger in the use of sophisticated mathematical evidence was also noted by the Supreme Court of Minnesota. In a case involving admissibility of virtually the same evidence as in the instant case, that court noted,

> Testimony expressing opinions or conclusions in terms of statistical probabilities can make the uncertain seem all but proven, and suggest, by quantification, satisfaction of the requirement that guilt be established "beyond a reasonable doubt". *See Tribe, Trial by Mathematics,* 84 Harv.Law Review 1329.

*State v. Carlson,* 267 N.W.2d 170, 176 (Minn.1978).

The court concluded in *Carlson* that the expert's testimony as to mathematical probability of the incriminating hairs belonging to someone other than the defendant could mislead or confuse the jury and therefore was improperly admitted at trial. Under the facts of that case, however, the court found the error to be harmless.

■ Likewise, notwithstanding the fact that appellant's contention contains merit, we find under the facts and circumstances of this case that the error was harmless. Nonethless, we discourage such broad statistical references as was made in this situation. It is proper for the chemist to make reference to the similarity of hairs analyzed, or to the consistent nature of them, but it is improper for such an analyst to make specific reference to any probability that the accused committed the offense or that because the hair was found as alleged, that it proves that the accused committed the alleged offense.

■ For his second assignment of error, appellant alleges the prosecution committed reversible error in his closing argument. Specifically, appellant objects to comments the prosecutor made concerning double jeopardy, the possibility the jurors may have sympathy for the appellant, and the fact that the jury serves as a community conscience. This Court tolerates and in fact encourages a reasonable exercise of freedom of speech and a wide range of argumentation during closing argument. *See Green v. State,* 611 P.2d 262 (Okl.Cr. 1980), *Carmichael v. State,* 44 Okl.Cr. 160, 279 P. 515 (1928). This Court will reverse on the basis of improper prosecutorial argument only where closing argument is so grossly improper as to affect the appellant's fundamental rights. *Langdell v. State,* 657 P.2d 162 (Okl.Cr.1982). After careful review of the entire record, we do not find reversible error. The record contains ample evidence for the jury to find appellant guilty of Murder in the First Degree. We do not find the prosecutor's arguments to have affected the outcome of this case. *See Pannell v. State,* 640 P.2d

568 (Okl.Cr.1982). We find this assignment of error to be without merit.

For his third assignment of error appellant argues that the accumulation of irregularities and errors deprived the appellant of a fair trial. Finding appellant's assignments of error to be without merit, we find no accumulation of error. *See Black v. State,* 664 P.2d 1054 (Okl.Cr.1983). The judgment and sentence is AFFIRMED.

BUSSEY, J., concurs.

PARKS, J., specially concurs.

PARKS, Judge, specially concurring:

While I agree with my brother Judge Brett's analysis of appellant's first assignment of error, I write separately to emphasize that this Court will not tolerate the misuse of mathematical probability evidence. The introduction of such testimony, through the giving of so-called expert opinions in terms of specific mathematical probabilities, presents a substantial danger of misleading, confusing, and invading the province of, the trier of fact. *See United States ex rel. DiGiacomo v. Franzen,* 680 F.2d 515, 517–18 (7th Cir.1982). "To say that the defendant's hair is merely similar to hair found in the victim's automobile is significantly different than saying that there's a one in 4,500 chance of it belonging to someone else." *Id.* at 519. Putting adequate foundation and relevancy concerns of such evidence aside, the trial judge has an affirmative duty to exclude evidence where its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. *See* 12 O.S.1981, § 2403. The tremendous danger of such evidence becomes readily apparent when even diligent cross-examination has been found insufficient to "dispel the psychological impact of the suggestion of mathematical precision." *People v. Collins,* 68 Cal.2d 319, 332, 66 Cal.Rptr. 497, 505, 438 P.2d 33, 41 (1968). Accordingly, it was error for the trial judge to allow OSBI Chemist Kenneth Ede to express his opinion concerning hair evidence in terms of mathematical probabilities. While I agree with the majority that,

on this record, the error was harmless be-
yond a reasonable doubt, I would add that
reversal may be appropriate in another
case.