Lonnie Wright RICHIE, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–93–1095.

Court of Criminal Appeals of Oklahoma.

Nov. 7, 1995.

Rehearing Denied Jan. 17, 1996.

Tom Gillert, Assistant District Attorney, Tulsa, for State.

Melody Brannon, Ron Evans, Oklahoma Indigent Defense System, Capital Trial Division, Norman, for defendant.

Cindy G. Brown, Norman, for appellant.

Susan Brimer Loving, Attorney General of Oklahoma, William L. Humes, Assistant Attorney General, Oklahoma City, for appellee.

## OPINION

JOHNSON, Presiding Judge:

### STATEMENT OF THE CASE

Appellant, Lonnie Wright Richie, was tried by jury for the crimes of: Kidnapping for Extortion (Count I) in violation of 21 O.S. 1991, § 745; Robbery with Firearm (Count II) in violation of 21 O.S.1991, § 801; Murder in the First Degree (malice aforethought and, alternatively, felony murder) (Count III) in violation of 21 O.S.1991, § 701.7; Unauthorized Use of a Debit Card (Count IV) in violation of 21 O.S.1991, § 1550.29; and Larceny of an Automobile (Count V) in violation of 21 O.S.1991, § 1720; after former conviction of two or more felonies, in Case No. CF–91–3676, in the District Court of Tulsa County before the Honorable B.R. Beasley, District Judge. Appellant was represented by counsel. The jury returned a verdict of guilty on all counts and set punishment at 99 years imprisonment for Count I, 60 years for Count II, death for Count III, 20 years for Count IV, and 30 years for Count V. The trial court sentenced appellant in accordance with the jury's verdict. From this Judgment and Sentence, appellant has perfected his appeal.

### SUMMARY OF FACTS

On August 28, 1991, Mrs. Laura Launhardt was abducted from a K–Mart store in Tulsa, Oklahoma. In the afternoon hours of the same day, Clyde Huffines, an oilfield pumper, was checking leases near Mannford, Oklahoma, when he noticed a van on one of those leases and three people in the area near the van. Huffines also noticed one of the two men standing on the passenger side of the van. Huffines saw this man place something behind the car seat. Then one of the men walked to the driver's door of the van and reached for something behind the seat and placed it in his back pocket or the

waistband of his pants. That man then approached Huffines and stated that they had "come up here to relieve ourselves."

Huffines also noticed a woman standing in short weeds approximately 35 feet from him. The woman came up to Huffines and said that he had interrupted her from relieving herself and Huffines told her to "go ahead." The woman then said something to Huffines in a much softer voice which he was unable to understand. She then repeated the statement, but Huffines was again unable to understand her. The woman turned and walked away from Huffines. Huffines subsequently identified the man he had spoken to as the defendant and the woman as Mrs. Launhardt.

Appellant and his accomplice then took Mrs. Launhardt to an abandoned, storm-damaged house near Keystone Lake which was in close proximity to the above-mentioned oil lease. Once inside the abandoned house, appellant and his accomplice bound Mrs. Launhardt's wrists and ankles then tied a strap around her neck and attached it to a clothes rod in a walk-in closet. Appellant and his accomplice then strangled Mrs. Launhardt by partially suspending her by the ligature around her neck while she lay in a face-down position.

After killing Mrs. Launhardt, appellant then engaged in a series of transactions utilizing her ATM card and other credit cards he had stolen from her. Appellant also took her Chevy Astro van.

On September 1, 1991, Mrs. Launhardt's body was discovered in the abandoned house by police. The medical examiner ruled the cause of death as asphyxiation by ligature and placed the time of death as approximately 72 hours before the discovery of the body.

Appellant was later apprehended in New Orleans, Louisiana, where Launhardt's van was also found. Ammunition of the type compatible with the handgun belonging to appellant was found in the glove box of the van. Appellant's handgun was located at a pawn shop. During the course of the investigation, it was discovered that appellant had once lived in a trailer house very near to the abandoned house where Mrs. Launhardt's body was found.

Additional facts will be discussed as pertinent to the propositions outlined below.

## JURY SELECTION ISSUES

In propositions nine and ten, appellant asserts that the trial court abused its discretion when it failed to excuse for cause three prospective jurors. Appellant goes on to complain that he was forced to use peremptory challenges to remove each of these veniremen.

The decision of whether or not to excuse a juror rests in the sound discretion of the trial court and, absent an abuse of that discretion, there is no error. *Lewis v. State*, 586 P.2d 81, 82 (Okl.Cr.1978). In addition, where there is a question about a prospective juror's ability to follow the law, counsel or the trial court may rehabilitate a potential juror by asking questions and receiving answers from them which indicate that he or she is capable of following the law as instructed by the court. *See Hale v. State*, 750 P.2d 130, 139 (Okl.Cr.), *cert. denied*, 488 U.S. 878, 109 S.Ct. 195, 102 L.Ed.2d 164 (1988).

Upon review of the record below, we find that each of the three jurors in question was properly rehabilitated. The trial court did not abuse its discretion in refusing to excuse prospective jurors Penix, Wooten and Hoefling for cause as their answers to questions posed by counsel and the court reflected their ability to be fair and impartial and to follow the law as instructed by the court. Accordingly, appellant's ninth and tenth propositions of error must fail.

## FIRST STAGE ISSUES AND INSTRUCTIONS

In his first proposition of error, appellant contends that he cannot be forced, over his objections, to defend against charges brought in any county in Oklahoma except those counties where the State has properly established venue. Appellant further submits the State failed to prove venue for the first degree murder was proper in Tulsa County, when the evidence, the prosecutor and the trial court all agreed the homicide

occurred in Pawnee County. We find this proposition must be denied.

■ The Oklahoma Bill of Rights imposes a constitutional requirement that all crimes in Oklahoma must be prosecuted in the county where the crime was committed, unless there is some uncertainty about where the offense actually occurred. Okl. Const. art. II, § 20. Even when there is some uncertainty, the State must come forward with enough evidence to show the crime might have been committed in the county where the defendant is being tried. *Id.* Appellant argues that venue for murder cannot be bootstrapped by joining the murder charge with another charge for which venue is proper. Venue for each offense in a multi-count Information must be established under the venue statutes and state constitution to lie in the county where the case is tried.

Under the facts of the instant case, where the victim is kidnapped in one county and subsequently murdered in another county, we find that venue is proper in both of the counties. *See Shelton v. State,* 793 P.2d 866, 871 (Okl.Cr.1990). In reaching a decision, the *Shelton* Court relied upon 22 O.S.1981, § 124 as authority. Title 22 O.S.1991, § 124 provides:

> When a public offense is committed, partly in one county and partly in another county, or the acts or effects thereof, constituting or requisite to the offense, occur in two or more counties, the jurisdiction is in either county.

In the instant case, the murder offense was preceded by the offense of kidnapping. We find the murder can neither be considered in isolation, nor as factually distinct from the antecedent kidnapping. The prosecution of appellant in Tulsa County for kidnapping and murder was not barred merely because the murder may have occurred in Pawnee County. "When a crime is committed in more than one county, as it was here, venue is proper in either county at the State's discretion." *Hawkins v. State,* 891 P.2d 586, 593 (Okl.Cr.1994). Finding no error, this proposition fails.

■ In his second proposition of error, appellant asserts that reversible error occurred as a result of the trial court's refusal to give his requested jury instructions regarding venue. It is well established in this jurisdiction that venue is a question of law. It is likewise well established that questions of law are for the court's consideration while questions of fact involving the guilt or innocence of the accused are the exclusive domain of the jury. *See Kovash v. State,* 519 P.2d 517, 522 (Okl.Cr.), *cert. denied,* 419 U.S. 830, 95 S.Ct. 52, 42 L.Ed.2d 55 (1974). Furthermore, appellant has failed to provide citation to relevant authority of this jurisdiction in support of his proposition. Accordingly, this proposition of error fails.

In his third proposition of error, appellant contends that reversible error occurred when the jury was permitted to convict him of felony murder without ever being instructed concerning the elements of the crime charged, i.e., kidnapping. The State concedes the fact that the jury was not instructed on the correct underlying felony as to the felony murder charge. The State further submits that appellant was convicted of a crime other than that with which he ·was charged.

■ The Information failed to allege sufficient facts for kidnapping under the felony murder charge. "[A]n information charging a defendant with felony murder must recite facts to allege every element of the First Degree Murder statute, 21 O.S.1991, § 701.7(B), including facts to allege every element of the underlying felony." *Allen v. State,* 874 P.2d 60, 65 (Okl.Cr.1994). Therefore, the trial court lacked jurisdiction to try appellant for First Degree Felony Murder based on kidnapping because nothing in the Information explained either the elements of the crime of kidnapping under 21 O.S.1991, § 741, or any particular facts relied on to establish the crime. *Allen,* 874 P.2d at 65.

The Information in this case alleged the crime of first degree murder in the following manner:

> DANIEL PAUL WALLER, JR. and LONNIE WRIGHT RICHIE, ON OR ABOUT 08–28–91, in Tulsa County, State of Oklahoma and within the jurisdiction of the Court, did commit the crime of MUR-

DER FIRST DEGREE, a felony by unlawfully, feloniously and willfully, while acting in concert each with the other, with malice aforethought, without authority of law, and/or while engaged in the commission of the crime of KIDNAPPING, effect the death of **LAURA ELAINE LAUNHARDT** by strangling her with a rope, then and there and thereby inflicting certain mortal wounds in the body of said **LAURA ELAINE LAUNHARDT**, from which mortal wounds the same **LAURA ELAINE LAUNHARDT** did languish and die on the 28th day of August 1991.

The trial court instructed the jury on first degree felony murder based on "kidnapping by extortion" instead of "kidnapping" as charged in the Information. Kidnapping and kidnapping for extortion are separate and distinct crimes. Kidnapping is defined in 21 O.S.1991, § 741 as:

Every person, who without lawful authority, forcibly seizes and confines another, or inveigles or kidnaps another, with intent, either:

First. To cause such other person to be secretly confined or imprisoned in this state against his will; or,

Second. To cause such other person to be sent out of this state against his will; or,

Third. To cause such person to be sold as a slave, or in any way held to service against his will, is punishable by imprisonment in the penitentiary not exceeding ten (10) years. Upon any trial for a violation of this section, the consent thereto of the person kidnapped or confined, shall not be a defense, unless it appears satisfactorily to the jury, that such a person was above the age of twelve (12) years, and that such consent was not extorted by threat, or by duress.

Kidnapping for extortion is defined in 21 O.S.1991, § 745(A) as:

A. Every person who, without lawful authority, forcibly seizes and confines another, or inveigles or kidnaps another, for the purpose of extorting any money, property or thing of value or advantage from the person so seized, confined, inveigled or kidnapped, or from any other person, or in any manner threatens either by written instrument, word of mouth, message, telegraph, telephone, by placing an ad in a newspaper, or by messenger, demands money or other thing of value, shall be guilty of a felony, and upon conviction shall suffer death or imprisonment in the penitentiary, not less than ten (10) years.

 The trial court failed to properly instruct the jury concerning the elements of the underlying felony. The court's instructions failed to define the elements of the charged crime of kidnapping. Instead, it instructed on kidnapping for extortion. Kidnapping for extortion is not one of the enumerated felonies for a felony murder conviction. 21 O.S.1991, § 701.7(B). The State does not contend that the basis of the felony murder charge was other than kidnapping. Accordingly, we do find error with respect to appellant's felony murder conviction.

 In the instant case, however, the jury was given two verdict forms which outlined the first degree murder charge. As such, the jury found appellant guilty of felony murder and murder with malice aforethought. In light of the foregoing, the jury's finding of felony murder is invalid. Nevertheless, appellant's conviction for first degree murder with malice aforethought is affirmed. The alternative murder charge of malice aforethought was supported by sufficient evidence and the jury instructions for this count were proper. Finally, we determine that the Information charging appellant with first degree murder (malice aforethought) sufficiently charged all essential elements of that crime. *Miller v. State*, 827 P.2d 875, 877–879 (Okl.Cr.1992). We find this to be the case, despite the fact that Count III of the Information erroneously states that the murder took place in Tulsa County.

 The test for sufficiency of the Information is "whether it contains every element of the offense to be charged and sufficiently apprises the defendant of what he must be prepared to meet." *Id.* at 877. It is clear upon review of Count III of the Information, and in light of our discussion of proposition one above, that the law under *Miller* was met.

■ Appellant also argues that the Information failed to sufficiently describe the crimes of kidnapping for extortion and robbery by firearm. The State submits that the language of Count I in the Information mirrors the statutory language of 21 O.S.1991, § 745 to a sufficient extent. Further, the State contends that appellant was adequately apprised of the facts constituting the offense and the Information was, therefore, sufficient to meet statutory and constitutional mandates. We agree.

Likewise, appellant complains about the sufficiency of the language in the Information regarding the robbery by firearm charge. The State proffers that the language used in Count II of the Information was sufficient. We find that the language used tracked the pertinent statutory language to an extent necessary to bring it within the authority of *Allen,* 874 P.2d at 65, and *Miller,* 827 P.2d at 877. Consequently, we find appellant's proposition with respect to Counts I and II of the Information lacks merit. Nonetheless, in the future, the State should be more careful as to the wording in the Information. *See Miller,* 827 P.2d at 879. Finally, we find merit in appellant's third proposition of error only with respect to the felony murder conviction.

In his fourth proposition of error, appellant claims that the evidence was insufficient to sustain his convictions for the charged crimes of kidnapping for extortion, robbery with a firearm, first degree murder, unauthorized use of a debit card, and larceny of an automobile. Appellant argues that because his convictions are based entirely upon circumstantial evidence they cannot be sustained based upon the evidence presented by the State.

■ "It is well established that a criminal case may be proved circumstantially and reasonable inferences drawn therefrom have the same probative effect as direct testimony." *Fiorot v. State,* 641 P.2d 551, 554 (Okl.Cr.), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2306, 73 L.Ed.2d 1308 (1982). Furthermore, the standard of review in a criminal case based entirely on circumstantial evidence is whether the evidence presented at trial tends to exclude every reasonable hypothesis than guilt. *Mayes v. State,* 887 P.2d

1288, 1302–1303 (Okl.Cr.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1260, 131 L.Ed.2d 140 (1995). However, the circumstantial evidence need not exclude every conceivable hypothesis or negate any possibility other than guilt. *Berry v. State,* 834 P.2d 1002, 1003 (Okl.Cr.1992); *Fiorot,* 641 P.2d at 554; *Cavazos v. State,* 779 P.2d 987, 989 (Okl.Cr.1989). We have determined that when implementing this standard, this Court "must consider the evidence and its inferences in a light most favorable to the State." *Berry,* 834 P.2d at 1003.

Consequently, we find that the evidence effectively precluded every reasonable hypothesis except that of guilt with respect to each of appellant's convictions. Therefore, this proposition of error lacks merit.

■ Appellant's fifth proposition of error asserts that the trial court's failure to issue a second degree "depraved mind" murder instruction resulted in reversible error. Jury instructions on lesser offenses are only appropriate when there is evidence which would reasonably support the finding of the offense. *Crumley v. State,* 815 P.2d 676, 678 (Okl.Cr.1991). Furthermore, this Court has "long held that the giving of instructions on lesser included offenses is within the sound discretion of the trial court...." *Id.* Therefore, absent error, this Court will not intervene. *Id.; Fowler v. State,* 779 P.2d 580, 585 (Okl.Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1537, 108 L.Ed.2d 775 (1990). The trial court's failure to give an instruction on second degree murder did not constitute an abuse of discretion. Accordingly, this proposition of error fails.

■ For his sixth proposition of error, appellant contends that reversible error resulted from the giving of a jury instruction on flight as that instruction allowed the jury to determine his guilt based on improper considerations and lessened the State's burden of proof. Appellant relies on *Mitchell v. State,* 876 P.2d 682 (Okl.Cr.1993). In *Mitchell,* this Court held it is plain, reversible error to give the flight instruction when the defendant does not controvert the State's evidence of alleged flight. *Id.* at 685. Appellant neither testified at trial, nor did he

present any evidence to controvert the State's evidence as to his alleged flight.

██ However, this Court has subsequently determined that the rule in *Mitchell* was an interpretation and application of state law and did not create any new constitutional right. *Rivers v. State,* 889 P.2d 288 (Okl.Cr. 1994). Therefore, *Mitchell* is prospective only and is not applicable to cases pending when *Mitchell* was decided. *Rivers,* 889 P.2d at 292. *See also Cooper v. State,* 889 P.2d 293, 310 (Okl.Cr.1995). Accordingly, this proposition of error must fail.

██ In his seventh proposition of error, appellant claims that his Sixth Amendment right to confrontation was violated by certain testimony of the medical examiner at trial. Specifically, he alleges that the subject testimony made reference to statements made by his accomplice and improperly inculpated appellant. Relying on *Bruton v. United States,* 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968), appellant claims the introduction of this evidence violated his constitutional right to confront and cross-examine the declarant of this highly prejudicial evidence.

██ We find the instant case distinguishable from *Bruton.* In *Bruton,* the United States Supreme Court held that a defendant's Sixth Amendment right of confrontation is violated when "his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial ..." *Fowler v. State* 779 P.2d at 586. *See Bruton,* 391 U.S. at 126, 88 S.Ct. at 1622–23. The statement made by the medical examiner which is at issue is "I do have access and have had access since prior to the autopsy to information that someone who purported to have been there. ..." In response to this comment, defense counsel objected and the trial court sustained the objection. Furthermore, the trial court admonished the jury to disregard the medical examiner's answer.

██ We find that this statement does not constitute a violation of the Confrontation Clause. This statement was not presented to the jury as any form of a confession by a codefendant. More importantly, this state-

ment did not name or directly implicate appellant as being present at the scene or taking part in the murder of the victim. Therefore, the alleged improper statement made by the medical examiner does not fall within the realm of those statements contemplated by *Bruton.* Moreover, the trial court's admonishment to the jury cured any possible error because the statement in question cannot be said to have determined the outcome in this case. *Price v. State,* 546 P.2d 632, 636 (Okl.Cr.1976); *Wimberli v. State,* 536 P.2d 945, 951–52 (Okl.Cr.1975). This proposition of error also fails.

██ Appellant's eighth proposition of error asserts that reversible error occurred during the prosecutor's second closing argument, in the first stage of trial, where he used the word "jeopardy" and referred to the concept of double jeopardy if the jury should acquit appellant. The trial court sustained defense counsel's objection as to these comments and admonished the jury to disregard the statement concerning jeopardy. However, the prosecutor went on to say once more, "[I]f you acquit today, that's it." This Court has repeatedly held, in other contexts, that it is improper for the prosecutor to comment upon the consequences of the jury's verdict. For example, references to the pardon and parole policies of the State are forbidden because of the prejudice such arguments inject into the jury's decision-making process. *Starr v. State,* 602 P.2d 1046, 1049 (Okl.Cr. 1979).

The State posits that the statement of the prosecutor at issue did not rise to a level requiring reversal or vacation of the death sentence. It further states that considering the entire record and the fact that the complained of statement was the only comment objected to during closing, or raised on appeal, that appellant has failed to demonstrate prejudice. The State relies on *Brown v. State,* 751 P.2d 1078, 1080 (Okl.Cr.1988), to make its argument. In *Brown,* the appellant alleged that prosecutorial misconduct occurred as a result of comments by the prosecutor "concerning double jeopardy, the possibility the jurors may have sympathy for the appellant, and the fact that the jury serves as

a community conscience." *Id.* The *Brown* Court concluded that there was ample evidence to support appellant's conviction and that the prosecutor's comments did not affect the outcome of the case. *Id.*

We find, upon review of the record, that ample evidence exists upon which to base appellant's conviction. Moreover, there was only one comment objected to which the trial court admonished the jury to disregard. As such, any error was cured. However, while the comment may not have been outcome determinative in the instant case, it should not be repeated again. It is suggested that the State refrain from the use of any reference to double jeopardy in the future.

## SECOND STAGE ISSUES

■ For his eleventh proposition of error, appellant claims that it was error to admit the testimony of the medical examiner during the second stage of trial. Appellant argues that Dr. Hemphill was not endorsed as a witness in the Bill of Particulars and that, therefore, no prior adequate notice was given.

The State, relying on *Boyd v. State*, 839 P.2d 1363, 1368 (Okl.Cr.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3005, 125 L.Ed.2d 697 (1993), submits that it was not required to specifically endorse Dr. Hemphill as a second stage witness as his testimony regarding the manner of the victim's death was offered in the first stage. We agree. Furthermore, the State clearly declared in the State's Notice of Evidence in Support of Aggravating Circumstances and Witness List and Summary of Second Stage Witnesses that testimony of first stage witnesses would be re-offered to show the manner and circumstances of the death. Therefore, we find that appellant had sufficient notice that Dr. Hemphill would testify again in the second stage of trial. Accordingly, this proposition of error lacks merit.

■ In his twelfth allegation of error, appellant asserts that the "continuing threat" aggravating circumstance is constitutionally infirm in that it is vague and capable of arbitrary and capricious application. This aggravating circumstance has been analyzed and upheld by this Court as specific, not vague and readily understandable. *Paxton v. State*, 867 P.2d 1309, 1325 (Okl.Cr.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 227, 130 L.Ed.2d 153 (1994). The constitutionality of this aggravating circumstance has been upheld by the United States Supreme Court in *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). This proposition of error is without merit.

■ In his thirteenth proposition of error, appellant asserts that reversible error resulted from the giving of Second Stage Instruction No. 9 which omitted the word "physical" from the phrase "conscious torture of the victim or serious abuse." Appellant's jury was told all they had to find was some sort of "serious abuse" rather than "serious physical abuse." Appellant contends that the failure of the instruction to read "serious physical abuse" resulted in a lowered standard of proof for the State and rendered the instruction fatally defective. In making this argument, appellant relies on the language in *Stouffer v. State*, 742 P.2d 562, 563 (Okl.Cr. 1987) (opinion on rehearing), *cert. denied*, 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988), holding that the application of this aggravator is restricted to "those murders in which torture or serious physical abuse is present." *Id.*

This Court must determine whether the failure to use the word "physical" in the instruction did, in fact, lessen the standard of proof required to find the aggravator of "heinous, atrocious or cruel." We find that Instruction No. 9, as given to the jury, properly channelled the sentencer's discretion in imposing the death penalty. Furthermore, we adjudge the phrase "serious abuse" to be commonly interpreted as referring to physical abuse in the present context. Finally, the specific facts of the instant case would have placed the jury's focus on the "conscious torture" element of the especially heinous, atrocious or cruel aggravator and not the abuse element. Therefore, we find that in this context, error, if any, was harmless. However, it is suggested that the phrase "serious physical abuse," which appears in the second paragraph of the uniform instruc-

tion (OUJI–CR 436), be used without modification in the future.

In his fourteenth proposition of error, appellant alleges the evidence that he killed Mrs. Launhardt to avoid lawful arrest or prosecution is insufficient to support the jury's finding with respect to that aggravating circumstance.

"When the sufficiency of the evidence of an aggravating circumstance is challenged on appeal, the proper test is whether there was any competent evidence to support the State's charge that the aggravating circumstance existed." *Romano v. State*, 847 P.2d 368, 387 (Okl.Cr.1993), *affirmed, Romano v. State*, 512 U.S. ——, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994). "In making this determination, this Court should view the evidence in the light most favorable to the State." *Id.*

When reviewing the aggravating circumstance of murder for the purpose of avoiding or preventing lawful arrest or prosecution, the existence of this circumstance is determined by looking at the killer's intent. *Romano*, 847 P.2d at 387. In the absence of his own statements as to intent, such evidence may be inferred from circumstantial evidence. *Id.*

Evidence presented by the State showed that appellant murdered the victim to avoid arrest and prosecution for her kidnapping and the theft of her credit cards and van. Such was inferred by evidence that the victim was taken to an abandoned house in an isolated area where her hands and ankles were bound in order to confine her. Not content to simply leave her and make a getaway, the evidence presented supported the conclusion that appellant chose to kill the victim to prevent her from subsequently identifying him. We find this to be sufficient evidence from which a rational juror could have found beyond a reasonable doubt the existence of this aggravating circumstance. *Id.* Accordingly, this assignment of error is without merit.

In his fifteenth and final proposition of error, appellant complains of numerous errors in jury instructions given in the second stage of trial. First, he asserts that the instructions on the manner in which the jury was to weigh aggravating and mitigating circumstances set forth an improper burden of proof.

Specific standards for balancing aggravating and mitigating circumstances are not constitutionally required. *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). Moreover, the jury was properly instructed that the State had to prove the existence of the aggravating circumstances beyond a reasonable doubt. It was then up to the jury to weigh aggravating circumstances against mitigating evidence.

The State must prove beyond a reasonable doubt the existence of at least one of the enumerated aggravating circumstances. *Romano*, 847 P.2d at 392. The determination of the weight to be accorded the aggravating and mitigating circumstances is not a fact which must be proved beyond a reasonable doubt. *Id.* Instead, it is a balancing process. *Id.* The balancing test utilized has consistently been upheld by this Court, and is not unconstitutional. Based on precedent, this proposition of error must fail.

Secondly, appellant complains that the instructions on the issue of mitigating evidence permitted jurors to ignore mitigating evidence altogether and seriously diminished the effect of the mitigating evidence present in this case. This issue was specifically addressed by this Court in *Pickens v. State*, 850 P.2d 328, 339 (Okl.Cr.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994), and found to be without merit. In the instant case, the jury was told that the finding of mitigating evidence need not be reduced to writing and the jury was the determiner of whether or not aggravating or mitigating evidence existed. Finally, the jury was instructed that the death penalty could not be imposed unless at least one aggravating circumstance was found and the aggravating evidence outweighed the mitigating evidence. We find this assignment of error to be without merit.

Next, appellant contends the court failed to instruct the jury that it had the option to return a life sentence regardless of

its finding on aggravating and mitigating circumstances. This argument has consistently been rejected by this Court. *Johnson v. State,* 731 P.2d 993, 1003 (Okl.Cr.), *cert. denied,* 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987); *Davis v. State,* 665 P.2d 1186, 1203–04 (Okl.Cr.), *cert. denied,* 464 U.S. 865, 104 S.Ct. 203, 78 L.Ed.2d 177 (1983); *Irvin v. State,* 617 P.2d 588, 597–98 (Okl.Cr.1980). More recently, this Court determined that a trial court may give an instruction which would inform the jury of its right to return a sentence of life no matter how great the weight of evidence supporting the aggravating circumstances. *See Fox v. State,* 779 P.2d 562, 573 (Okl.Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990), (*quoting Walker v. State,* 723 P.2d 273, 284 (Okl.Cr.), *cert. denied,* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986)). Although a trial court can give the instruction, it is not error for the court to refuse to do so. *Romano,* 847 P.2d at 392. Therefore, this assignment of error fails.

■ Finally, appellant complains that the language in the uniform instructions, taken together, implies that jury findings regarding mitigating circumstances must be unanimous, and the jury should be instructed that its findings do not have to be unanimous. This argument has been considered and rejected by this Court many times in the past. *See Mayes,* 887 P.2d at 1320; *Pickens,* 850 P.2d at 339–40; *Stiles v. State,* 829 P.2d 984, 997 (Okl.Cr.1992). We find no error here in the omission of this instruction.

### MANDATORY SENTENCE REVIEW

■ Pursuant to 21 O.S.1991, § 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of aggravating circumstances as enumerated in 21 O.S. 1991, § 701.12. As discussed above, we found the State presented sufficient evidence to prove appellant murdered Laura Launhardt to avoid arrest or prosecution, that the murder was especially heinous, atrocious or cruel and that there existed the probability that the appellant would commit criminal acts of violence that would constitute a continuing threat to society. *See supra,* Propositions XII, XIII and XIV.

In mitigation, appellant presented the testimony of family members, who described difficulties and physical and emotional abuse encountered by appellant as he was growing up, as well as his positive influence on his nieces and nephews. Each of appellant's five brothers and sisters, two nieces, and his mother testified about their relationship with appellant, the problems he faced growing up, and the positive aspects of his life.

After carefully reviewing the aggravating circumstances and all mitigating evidence, we find the aggravating circumstances outweigh the mitigating evidence and that the sentence of death is factually substantiated and appropriate. Finding no error warranting reversal or modification, the Judgments and Sentences are **AFFIRMED.**

LANE and STRUBHAR, JJ., concur.

CHAPEL, V.P.J., and LUMPKIN, J., concur in result.