Marvin **PERRY**, Appellant,

v.

**STATE of Oklahoma, Appellee.**

No. F–87–857.

Court of Criminal Appeals of Oklahoma.

Jan. 11, 1993.

Rehearing Denied June 15, 1993.

Allen Smith, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen. of Oklahoma and A. Diane Hammons, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

JOHNSON, Judge:

Appellant, Marvin Perry, was tried by jury and convicted in Case No. CRF–86–2036 in the District Court of Oklahoma County before the Honorable Leamon Freeman, District Judge, of Murder in the First Degree (Count I), Robbery with a Dangerous Weapon (Count II), Kidnapping (Count III), Burglary in the Second Degree (Count IV) and Unauthorized Use of a Motor Vehicle (Count V). The jury set punishment at life imprisonment (Count I), twenty (20) years imprisonment (Count II), and thirty (30) years imprisonment (Count III). Counts IV and V were dismissed. Judgments and Sentences were imposed to run concurrently. We affirm in part and reverse in part.

According to accomplice Charlotte Brown's testimony, on the evening of February 16, 1986, the victim, wanting to meet her, went to the home of Melvin Tyrone Perry, brother of Appellant. Melvin Tyrone Perry had arranged the meeting so that the victim, Robert McClish, could be drugged and robbed. As McClish entered the residence, Appellant and his brother came into the room carrying weapons. Brown left the room and when she returned, McClish was face down on the floor, with his hands handcuffed behind

him. As McClish begged for his life, Melvin Tyrone Perry grabbed him by the hair and shot him in the back of his head. Appellant was standing off to the side as this took place. Melvin Tyrone Perry stripped McClish's body of his money, clothing and personal belongings. Appellant and Melvin placed the victim's body in a plastic bag and sleeping bag and loaded the body into Melvin Tyrone's truck. Then Melvin Tyrone and Brown drove to the bridge over the Cimarron River and dumped the body into the river where it was found on March 30, 1986.

■ For his first proposition of error, Appellant asserts that the evidence at trial was insufficient to support any of his three convictions. We will address the sufficiency of the evidence presented at trial as it relates to each charge. First, Appellant alleges that the murder of Robert McClish did not occur "in the commission of ... robbery with a dangerous weapon." He argues that a homicide that precedes any act necessary for the completion of the underlying felony cannot be "in the commission of" the felony. The evidence in this case reveals that the victim was murdered first and then robbed.

This Court, in *Clark v. State*, 558 P.2d 674, 678 (Okl.Cr.1977), adopted the 'res gestae' interpretation in disposing of a similar argument where the facts disclosed that the armed robbery was completed before the homicide. The Court said:

> The defendants would have us here rule that once the technical crime is complete, what follows is 'new material,' and the felony is no longer to be considered; with this we cannot agree.... It is our intention to adopt the 'res gestae' interpretation in disposing of this assignment of error: if the homicide is committed during the one, continuous transaction, the acts are so closely connected as to be inseparable in terms of time, place, and causal relation, and the actions tend to be explanatory and incidental to each other, the homicide has been committed during the felony in our statutory sense.

Applying the "res gestae" interpretation in this case, we find that the homicide was committed during the commission of robbery with a dangerous weapon. Therefore, we find this contention to be without merit.

■ Next, Appellant asserts that the accomplice testimony of Charlotte Brown implicating him was not corroborated by independent evidence. In this case, Appellant himself corroborated Brown's testimony when he testified at trial and admitted that he shot the victim in self-defense. Title 22 O.S.1981, § 742 mandates that some other evidence that "tends to connect the defendant with the commission of the offense" be presented. Here, if Brown's testimony is corroborated in one material fact by independent evidence tending to connect Appellant with the commission of the crime, the jury may infer that all of her testimony is truthful. *See Maxwell v. State*, 742 P.2d 1165, 1169 (Okl.Cr.1987); *Jemison v. State*, 633 P.2d 753, 755 (Okl. Cr.1981). This proposition is without merit.

■ In his third proposition of error, Appellant claims that he cannot be convicted of both felony-murder and the underlying felony of robbery with a dangerous weapon as convictions for both violate the Double Jeopardy Clause of the United States Constitution. We previously addressed this same question in *Perry v. State*, 764 P.2d 892, 898 (Okl.Cr.1988), where we quoted *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977), saying:

> "[W]here ... a person has been tried and convicted for a crime which has various incidents included in it, he cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offense." *In re Nielsen*, 131 U.S. 176, 188, 9 S.Ct. 672, 676, 33 L.Ed. 118 (1889).

> Although in this formulation the conviction of the greater precedes the conviction of the lesser, the opinion makes it clear that the sequence is immaterial. Thus the Court treated the formulation as just one application of the rule that two offenses are the same unless each requires proof that the other does not." (Citation omitted)

See also *Munson v. State*, 758 P.2d 324, 332 (Okl.Cr.1988) and *Jefferson v. State*, 675 P.2d 443, 447 (Okl.Cr.1984). Thus we find this proposition to be of merit. Accordingly, Appellant's conviction for Robbery with a Dangerous Weapon must be and is REVERSED with instructions to DISMISS.

█ In his fourth proposition, Appellant questions the sufficiency of the evidence presented on the kidnapping charge. Appellant contends that there was no showing that he possessed the specific intent to hold the victim "to service against his will" as charged in the amended information or "to confine secretly" as given in the instructions to the jury. Here, Appellant was charged with violating 21 O.S.1981, § 741(3) (to service against his will), but convicted of violating § 741(1) (to confine secretly). In *Carter v. State*, 764 P.2d 206 (1988), where we had an analogous situation, we reviewed the sufficiency of the evidence under § 741(3) and found a substantial violation of a constitutional right, namely The Due Process Clause, which requires the State to prove beyond a reasonable doubt "every fact necessary to constitute the crime with which the accused is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). In *Carter, supra,* we held:

> The information contained the elements of the crime charged and apprised appellant of what he must be prepared to meet. (Citations omitted) Although the trial court instructed the jury on secret confinement under 21 O.S.1981, § 741(1), this is a separate offense, not a lesser included offense under Section 741(3), because the crime of kidnapping by "secret confinement" contains elements not

found within the offense charged of kidnapping by holding "to service against his will." (Citation omitted) The State did not amend the information to allege kidnapping by "secret confinement" under Section 741(1) after the trial commenced.... Because the information failed to allege kidnapping by secret confinement, the trial court was without jurisdiction to so instruct. See *Smith v. State*, 572 P.2d 262, 265 (Okl.Cr.1977).

The Court found that "the State failed to produce one scintilla of evidence, either direct or circumstantial, that appellant held these children to service against their will." The Court, holding that the Double Jeopardy Clause of the Fifth Amendment controls over conflicting statutory authority, i.e., 22 O.S.1981, § 1067, reversed and remanded the case with instructions to dismiss.

In the case sub judice, we will consider whether Appellant held McClish "to service against his will." Our statute [1] does not define the phrase "held to service" and no Oklahoma case or jury instruction appears to have attempted a definition. However, several of our sister states have kidnap statutes which contain this phrase.[2] Several of those jurisdictions offer us guidance which would facilitate our inquiry.

The Supreme Court of Vermont, in *State v. McLaren*, 376 A.2d 34 (1977), drawing from the nineteenth century genesis of its statute and its attendant correlation with involuntary servitude, held that the hold to service element requires that the victim be forced, compelled or coerced to engage in an act, which act or forbearance inures to the benefit of the perpetrator of the crime.

The State of Wisconsin, in passing on the constitutionality of its statute being challenged on the grounds of vagueness and

---

1. 21 O.S.1981, § 741 reads as follows:

 Every person who, without lawful authority, forcibly seizes and confines another, or inveigles or kidnaps another, with intent, either:
 First. To cause such other person to be secretly confined or imprisoned in this state against his will; or,
 Second. To cause such person to be sent out of this state against his will; or,
 Third. To cause such person to be sold as a slave, or in any way held to service against his will, is punishable by imprisonment in the

 penitentiary not exceeding ten (10) years. Upon any trial for a violation of this section, the consent thereto of the person kidnapped or confined, shall not be a defense, unless it appears satisfactorily to the jury, that such person was above the age of twelve (12) years, and that such consent was not extorted by threat, or by duress.

2. California, Idaho, Michigan, Nevada, New Mexico, Massachusetts and Wisconsin have statutes with the "hold to service" language.

overbreadth, concluded, after looking to the common and approved usage of words as established by dictionary definitions, that the meaning of "to hold to service" is clear on its face. The Court held that the word "service" includes acts done at the command of another. *See State v. Clement,* 153 Wis.2d 287, 450 N.W.2d 789 (App. 1989).

The Supreme Court of New Mexico, in *State v. Ortega,* 112 N.M. 554, 817 P.2d 1196 (N.M.1991), held that holding to service should be "construed to effectuate the same overall scheme as the first two objectives, holding for ransom and as a hostage—namely, to accomplish some goal that the perpetrator may view as beneficial to himself or herself." (Emphasis added)

■■■ Section 741 of Oklahoma's kidnap statute originated from the Compiled Laws of the Territory of Dakota, 1887, Section 6474 (Comp.Laws Dak.1887, § 6474). Throughout the development of this section, the "hold to service" provision has been retained. Until 1961, several other sections of the kidnap statute [3] dealt specifically with "the services or labor of any black, mulatto, or other person of color" and the "hold to labor or service" language was used therein. Based on a historical analysis of our kidnap statute and on the common and approved usage and meaning [4] of the words "hold to service", we conclude that the "hold to service" against one's will language encompasses an "involuntary servitude" element. Inherent in said element are any acts or services, or the forbearance of same, done at the command of the perpetrator, through force, inveiglement or coercion, for the benefit of the perpetrator. The jury should be instructed on that element, by providing the aforesaid explanation of the statutory phrase.

3. These sections, later recodified as §§ 742–744 and providing for the crime and punishment for anti-fugitive slave law, were repealed in 1961.

4. *Black's Law Dictionary,* 6th Edition, p. 1368 (1990), defines "service" as including, "Duty or labor to be rendered by one person to another, the former being bound to submit his will to the direction and control of the latter." In *Web-*

In light of the foregoing and considering the evidence in the light most favorable to the State, we do not find that the State met its burden of proof in proving beyond a reasonable doubt that Appellant held the victim to service against his will. Accordingly, Appellant's Judgment and Sentence for Kidnapping are REVERSED and REMANDED with instructions to DISMISS.

■■■ Next, Appellant contends that he was denied his 14th Amendment right to due process because the State failed to disclose an alleged promise to accomplice, Charlotte Brown, in exchange for her testimony. This argument was considered in *Perry v. State, supra,* where we found, and so find here, that the jury was told of the plea agreement and was able to assess her credibility. Additionally, defense counsel had opportunity to argue to the jury regarding Brown's credibility. Accordingly, Appellant was not denied due process of law. This proposition is without merit.

■■■ Lastly, Appellant argues that he was denied his 6th and 14th Amendment rights to effective assistance of counsel and due process of law when his counsel failed and refused to file a motion for severance and when he failed and refused to file a motion to quash and suppress evidence as a result of an apparent illegal search warrant. Appellant, in support of his argument that his trial should have been severed from that of his brother's, contends that his defense of self-defense was prejudiced where he was forced to trial with his non-testifying brother. This Court has consistently held that the standard for severance of trial is whether the defenses are antagonistic in that each defendant is attempting to exculpate himself and inculpate his co-defendant. Additionally, Appellant must show prejudice resulting from being tried with his brother, Melvin Tyrone

*ster's Third New International Dictionary (Unabridged),* p. 2075 (1986), the definitions of "service" include these meanings: "an act done for the benefit or at the command of another"; "action or use that furthers some end or purpose; conduct or performance that assists or benefits someone or something; deeds useful or instrumental toward some object."

Perry. *See Vowell v. State,* 728 P.2d 854, 857 (Okl.Cr.1986); *VanWoundenberg v. State,* 720 P.2d 328, 331 (Okl.Cr.1986) *cert. denied,* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986); *Master v. State,* 702 P.2d 375, 378 (Okl.Cr.1985). Here, there are no antagonistic defenses and there has been no showing that Appellant was prejudiced as a result of being tried with his brother.

 As to Appellant's allegation regarding failure and refusal to file a motion to quash and to suppress evidence, he merely makes a bald assertion and fails to provide any documentation to support his position. Appellate review of an ineffective assistance of counsel claim begins with a presumption of competence. The burden is on Appellant to demonstrate both a deficient performance and resulting prejudice. *Blake v. State,* 765 P.2d 1224 (Okl.Cr.1988); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, L.Ed.2d 674 (1984). We find this assignment to be meritless.

For the aforesaid reasons, appellant's convictions for Robbery with a Dangerous Weapon and Kidnapping are REVERSED and the remaining conviction for Murder in the First Degree is AFFIRMED.

LUMPKIN, V.P.J., and LANE, P.J., and BRETT, J., concur.