1998 OK CR 45

**Jessie James CUMMINGS, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–96–657.

Court of Criminal Appeals of Oklahoma.

Aug. 4, 1998.

Rehearing Denied Nov. 3, 1998.

Paul Faulk, Norman, Joseph O. Minter, Madill, for Defendant at trial.

James Thornley, Durant, John McPhail, Atoka, for the State at trial.

William H. Luker, Oklahoma Indigent Defense System, Norman, for Appellant on appeal.

W.A. Drew Edmondson, Attorney General, Robert Whitaker, Assistant Attorney General, Oklahoma City, for Appellee on appeal.

## OPINION

STRUBHAR, Vice Presiding Judge.

¶1 Appellant, Jessie James Cummings, was convicted of First Degree Malice Aforethought Murder (Count I) and First Degree Felony Murder (Count II), in the District Court of Coal County, Case No. CF–94–32, after a jury trial held before the Honorable Doug Gabbard, II.[1] As to both of these counts, the State filed a Bill of Particulars alleging two aggravating circumstances: (1)

---

1. Appellant was also charged with Count III, Child Abuse. However, this count was dismissed    at the end of the first stage of trial.

that the murders were committed for the purpose of avoiding or preventing a lawful arrest or prosecution;[2] and, (2) the existence of a probability that Appellant would commit criminal acts of violence that would constitute a continuing threat to society.[3] As to Count I, the jury found the existence of one aggravating circumstance, the existence of a probability that Appellant would commit criminal acts of violence that would constitute a continuing threat to society. As to Count II, the jury found the existence of both alleged aggravating circumstances. The jury assessed punishment at death on each count. The trial court sentenced Appellant accordingly. From this Judgment and Sentence Appellant has perfected his appeal.[4]

## FACTS

¶ 2   In September of 1991, Appellant lived in Phillips, Oklahoma, in a residence he shared with his first wife, Sherry Cummings, his second wife, Juanita Cummings, Appellant's and Sherry's daughter, Debra, Juanita's son Robbie, and Appellant's father, Jesse Samuel Cummings. Appellant had married Sherry in 1987, and, without divorcing her, had married Juanita in 1989. He, in effect, had two wives.

¶ 3   On September 8, 1991, Appellant went to the Atoka County Sheriff's Office and reported his sister, Judy Ann Moody Mayo, and her daughter, Melissa Moody, as missing. Appellant told the clerk that friends had told him that his sister's vehicle had been seen parked at Atoka Lake on Highway 43 and that it had broken down as its hood and doors were opened. Appellant reported what his sister and her daughter had been wearing at the time of their disappearance. He also said that someone had possibly picked them up. Appellant showed the clerk pictures of Judy and Melissa.

¶ 4   The next day, on September 8, Judy's body was found floating in a small pond adjacent to Atoka Lake. She had suffered

gunshot wounds to her head and neck and her body was wrapped in a quilt and a mattress pad. The following month, in October, the skeletal remains of Melissa were located by the side of a bridge over the Clear Boggy River in Choctaw County. Due to the skeletonization of the body, an exact cause of death could not be determined but evidence of sharp force injuries to several ribs was noted.

¶ 5   The case remained unsolved for almost three years. During this time, Appellant and his two wives moved from Phillips, Oklahoma, to Lehigh, Oklahoma. In the summer of 1994, Juanita went to work for a minister named Edward Fields. Juanita told Fields that she had shot Judy and that Appellant had made her do it. She also stated that Appellant had wanted her to kill Melissa but she got sick and could not do it. She told Fields that after she killed Judy she went to work and when she got back Judy's body was gone and so was Melissa.

¶ 6   Subsequently, Juanita was charged with First Degree Murder for the death of Judy, and Sherry was charged with First Degree Murder for the death of Melissa. First Degree Murder charges were dropped against Sherry when she entered a plea agreement with the State and pled guilty to two counts of Accessory After the Fact and one count of Permitting a Child to be Abused. First Degree Murder charges were also dropped against Juanita and she pleaded guilty to Second Degree Murder. Both Sherry and Juanita implicated Appellant in the commission of the crimes and testified against him at trial.

¶ 7   Sherry testified that on September 4, 1991, Appellant told her to take his sister, Judy, to look at houses and to shoot Judy from behind when they got to an empty house. The next morning, on September 5, Appellant left early to drive his father to the hospital in Oklahoma City. That morning, Sherry took Judy to look at houses. She did not shoot Judy while they were looking at

2.  21  O.S.1991, § 701.12(5).

3.  21  O.S.1991, § 701.12(7).

4.  Appellant's Petition–in–Error was filed in this Court on November 20, 1996. His Brief–in–Chief was filed on July 7, 1997, and the State's Response Brief was filed on November 4, 1997. The case was submitted to this Court on November 26, 1997, and oral argument was heard on March 10, 1998.

houses. When they had finished looking at houses, Sherry and Judy returned to Appellant's residence. Sherry, Judy, and Juanita watched TV in the house and the kids, Debra, Robbie and Melissa were outside. When Judy indicated she was ready to leave, Sherry went to the bathroom. While she was gone she heard five gunshots. When she returned to the living room she saw Judy sitting on the couch slumped over. Juanita had shot her. Sherry and Juanita brought all three kids into the house, covering their eyes when they passed through the living room, and they put them in a back room. They then pulled Judy through the house and outside into the cellar. They cleaned blood off the couch, the floor and the living room wall. After they had cleaned, Robbie and Debra went back outside and Juanita left to go to work at the Dairy Queen in Atoka. Melissa stayed locked in the back room. Juanita returned from work around 11:00 that night.

¶ 8 Appellant returned from Oklahoma City later that same night. When he got home Sherry and Juanita met him and Juanita told him that she had killed Judy. The three of them retrieved Judy's body from the cellar and pulled her to her truck. Appellant went to the house and got something white that he wrapped around Judy. Appellant drove Judy's truck and Sherry followed in the car. Juanita stayed at the house. Sherry followed Appellant toward Atoka Lake. She parked her car and waited while Appellant drove on further. When he came back Judy was no longer in the truck. Appellant parked Judy's truck off the side of the road next to a bridge. He raised the hood and left the truck there. Appellant drove home in the car with Sherry.

¶ 9 Sherry testified that when they arrived back at the house, Appellant and Juanita went into the bedroom where Melissa was hand cuffed to the bed. They were there from fifteen to twenty minutes. Juanita came out first and then Appellant followed. Appellant handed Juanita the keys to the hand cuffs and told her to bring Melissa out of the room. Appellant then told Sherry and Melissa to go get in the car. Sherry testified that Melissa asked where they were going

and Appellant said they were going to meet her momma. Sherry fell asleep while they drove and she woke up when the car stopped. Appellant got out of the car and told Melissa to get out. They walked behind the car and climbed over a railing. They were gone fifteen to twenty minutes and when he returned to the car, Appellant was alone. Sherry stated that he had blood on his hands and the front of his coveralls. Appellant drove back to Atoka Lake and stopped on the opposite side of the lake from where he had taken Judy. He cleaned up, threw away his shoes and they drove back toward the house. On the way there Appellant threw his coveralls out the window. When they arrived back at the house, Appellant and Juanita took the couch and left. They were gone for about an hour before they returned.

¶ 10 Sherry testified that when she was first questioned by authorities about Judy and Melissa's disappearance she told them that they had left in a dark blue or black pickup that had come by the house. She claimed to have given this statement because Appellant told her to.

¶ 11 Juanita also testified against Appellant at trial. She testified that on the morning of September 5, 1991, Appellant told her that he wanted her to kill his sister, Judy, and he wanted her to use the .38 to do it. Appellant then left to take his father to Oklahoma City. Juanita testified that on the morning of September 5, she took Melissa to the welfare department with her. When they arrived back at the house, Juanita was there with Sherry, Judy and the kids. The kids were outside playing. Sherry went to the porch and called her to come out there. Sherry told her to do what she knew she needed to do and she brought Juanita the gun. Juanita went back into the house and shot Judy. Juanita and Sherry brought the kids into the house and told them to play in the bedroom. They then drug Judy's body to the cellar. They cleaned the house and couch and then Juanita went to work at the Dairy Queen.

¶ 12 Juanita testified that she arrived back home at around 11:00. When she got home she went into the bedroom where Melissa was handcuffed and lying on the bed.

She went back into the living room. Appellant came home a little after midnight. He asked her if it was done and she replied that it was. Then Sherry and Appellant left the house and with the car keys and the truck keys. Juanita was told to stay in the house. She testified that she did not help move Judy's body but she never saw it again.

¶ 13   When Appellant and Sherry came back, Appellant told Juanita and Sherry to go in the bedroom and unhandcuff and undress Melissa. He then made them stay in the room while he raped Melissa. Afterward, Appellant, Sherry and Melissa left the house. Only Appellant and Sherry returned. When he returned, Appellant was wearing only a pair of shorts. He had been dressed in coveralls when he left the house. He told Juanita to help him load the couch on the truck and they took it to a bridge near Centrahoma and threw it over the side of the bridge.

¶ 14   When questioned by authorities Juanita told them that she had been sleeping in her room when she heard someone pull up to the house and Judy hollered that she and Melissa were leaving.

## PRETRIAL ISSUES

¶ 15   Appellant argues in his first proposition that the trial court erred in denying his motion to sever his trial for Count I, the murder of Judy Mayo, from Counts II and III, the murder and child abuse of Melissa Moody. This Court has held that "joinder of separately punishable offenses is permitted if the separate offenses arise out of one criminal act or transaction, or are part of a series of criminal acts or transactions." *Glass v. State*, 1985 OK CR 65, 701 P.2d 765, 768. Further, with respect to a series of criminal acts or transactions, "joinder of offenses is proper where the counts so joined refer to the same type of offenses occurring over a relatively short period of time, in approximately the same location, and proof as to each transaction overlaps so as to evidence a common scheme or plan." *Id. See also Pack v. State*, 1991 OK CR 109, 819 P.2d 280, 282.

¶ 16   In applying this law to the facts of the present case, we find that the murders of Judy Mayo and her daughter were part of a series of criminal acts which were related to one another. Although they were not killed by exactly the same means or at the exact same time, Judy and Melissa were murdered within twelve hours of each other. Further, although Judy and Melissa were not killed in the same location, the residence that Appellant shared with Juanita and Sherry was central to both murders. Judy was actually killed there and Melissa was held captive there until immediately before she was taken to the location where she was killed. Finally, we find that proof as to each transaction does overlap so as to indicate a common scheme or plan. The evidence suggests Appellant either initially intended to kill both Judy and Melissa or that he initially intended to kill only Judy but after Judy was killed it became necessary to also kill her daughter. There was a logical relationship between the offenses.

¶ 17   Appellant also contends that the joinder of offenses was in error because it severely prejudiced him. He argues that if Count I had been tried separately from Counts II and III, the jury would not have heard testimony that he raped and killed Melissa as this would have been inadmissible evidence of other crimes. We find that these two crimes were so closely related that evidence of one murder was admissible as part of the *res gestae* of the other. Accordingly, we cannot find that the joinder of offenses severely prejudiced Appellant's right to a fair trial. This proposition is without merit.

## FIRST STAGE ISSUES

¶ 18   Appellant argues in his second proposition that Sherry and Juanita Cummings were each accomplices to the murders of both Judy and Melissa, and accordingly, their testimony regarding his involvement in the commission of these offenses required corroboration. He also contends that the testimony of Sherry and Juanita was not sufficiently corroborated to support his conviction for these murders.

■ ¶ 19 This Court has held that, "[t]he test for determining whether a person is an accomplice is whether he or she could have been charged with the crime for which the accused is on trial." *Bannister v. State*, 1996 OK CR 60, 930 P.2d 1176, 1179. The record reveals that Juanita Cummings was actually charged with First Degree Murder for the killing of Judy Mayo.[5] Although Sherry Cummings was not charged with any crime in regard to Judy Mayo's homicide, the trial court ruled that she was an accomplice to this offense as a matter of law. This ruling was supported by testimony that Sherry was present in the house at the time that Juanita shot Judy and that Sherry gave Juanita the gun that was used to kill Judy. From this, we find that both Juanita and Sherry were accomplices to Count I.

■ ¶ 20 Having found that Juanita and Sherry were correctly ruled as a matter of law to be accomplices to the murder of Judy Mayo, we turn next to the question of whether their testimony implicating Appellant was sufficiently corroborated at trial by independent evidence of Appellant's involvement in the commission of the offense. "[T]he general rule is that testimony of an accomplice must be corroborated with evidence, that standing alone, tends to link the defendant to the commission of the crime charged...." *Sadler v. State*, 1993 OK CR 2, 846 P.2d 377, 383. It is not necessary that an accomplice's testimony be corroborated in all material respects. *Johns v. State*, 1987 OK CR 178, 742 P.2d 1142, 1146. It is only required that there to be at least one material fact of independent evidence that tends to connect the defendant with the commission of the crime. *Id.* Further, circumstantial evidence can be adequate to corroborate the accomplice's testimony. *Pierce v. State*, 1982 OK CR 149, 651 P.2d 707, 709.

¶ 21 Appellant argues that aside from the testimony of Juanita and Sherry, there was no evidence presented at trial which can be found to independently connect him with the commission of Judy's murder. The trial rec-

ord supports this assertion. Evidence was presented at trial that Appellant was in Oklahoma City with his father at the time that Juanita killed Judy. There was evidence that he reported his sister missing three days after she was killed. The prosecution also offered into evidence three small notebooks kept by Appellant in which he had written details of events which occurred after his sister's disappearance and during the investigation into her disappearance. Nowhere in these notebooks did Appellant write anything indicative of his involvement in Judy Mayo's murder. The trial record also reveals that Appellant had made a statement to the police in which he admitted to helping drag his sister's body to her pickup and to dumping her body into the lake. While this evidence clearly implicates Appellant as an accessory after the fact, it does not support a finding that he acted as a principal, either by aiding or abetting his sister's murder. As Appellant contends, outside of the testimony of Juanita and Sherry, the evidence only supports a finding that Appellant assisted his wives in lying to the police and in covering up the crime. It does not independently connect him to the actual commission of Judy Mayo's murder. Accordingly, Appellant's conviction for Count I must be reversed with instructions to dismiss.

■ ¶ 22 We next address Appellant's conviction for Count II, the murder of his niece, Melissa Moody. Sherry Cummings was initially charged with First Degree Murder for the death of Melissa Moody.[6] By her own testimony, Sherry helped hold the child captive and went with Appellant and Melissa in the car to the place where Melissa was taken and killed. Juanita was not charged in conjunction with Melissa's homicide. The trial court did not direct the jury to consider Juanita and Sherry accomplices as a matter of law regarding the murder of Melissa. However, as the evidence was sufficient to bind Sherry over on the charge of First Degree Murder for the death of Melissa, we find that it also supports a finding that Sher-

---

5. Juanita Cummings subsequently entered a plea of guilty to the lesser crime of Second Degree Murder for the homicide of Judy Mayo.

6. Sherry Cummings subsequently entered a plea of guilty to two counts of Accessory After the Fact and one count of Permitting a Child to be Abused.

ry was an accomplice to this crime as a matter of law.

¶ 23 As to Juanita, Appellant asserts that she, too, was an accomplice. Under the evidence presented at trial, Juanita could not be indicted for Melissa's murder as there is no evidence that she intended to participate in the crime or aided or abetted its commission. Accordingly, we find that Juanita was not an accomplice to Melissa's murder and her testimony can be considered independent evidence connecting Appellant to the commission of this crime. *See Bowie v. State*, 1995 OK CR 4, 906 P.2d 759, 763–64. Because Juanita's testimony provided independent evidence corroborating Sherry's testimony as to at least one material fact which tended to connect Appellant with the commission of the crime, the jury could infer that all of Sherry's testimony was truthful. *See Perry v. State*, 1993 OK CR 5, 853 P.2d 198, 200. Appellant's assertion that his conviction on Count II was based entirely upon uncorroborated accomplice testimony is without merit.

¶ 24 In his third proposition Appellant complains that the trial court erred by refusing to instruct the jury that Sherry and Juanita were accomplices as a matter of law to Count II, the murder of Melissa Moody. As we have already determined that Juanita was not an accomplice as a matter of law to Count II, failure to instruct otherwise cannot be found to have been error. However, because the evidence was sufficient to support a First Degree Murder charge against Sherry for Melissa's murder, the trial court did err by failing to instruct the jury that Sherry was an accomplice to this crime as a matter of law. This Court has held that "where there is overwhelming evidence of guilt and the presence of sufficient corroborating testimony, the failure to so instruct is harmless." *Howell v. State*, 1994 OK CR 62, 882 P.2d 1086, 1092, *cert. denied*, 514 U.S. 1113, 115 S.Ct. 1968, 131 L.Ed.2d 858 (1995). *See also Bryson v. State*, 1994 OK CR 32, 876 P.2d 240, 256, *cert. denied*, 513 U.S. 1090, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995). Because we find that there was overwhelming evidence of Appellant's guilt as to Count II and that Appellant's conviction on this count was supported by sufficient corroborating evidence, we find this error to have been harmless.

¶ 25 Appellant was originally charged with First Degree Malice Murder for the death of Melissa Moody. These charges were dismissed without prejudice by the magistrate upon a finding that Coal County lacked venue for that crime.[7] The State lodged an appeal to this ruling pursuant to Rule 6, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (1995). In an Accelerated Docket Order handed down on January 23, 1996, this Court upheld the magistrate's decision dismissing the First Degree Malice Murder charge for lack of venue. Subsequently, the State amended the Information filed in Coal County to charge Appellant alternatively with First Degree Malice Murder and First Degree Felony Murder.[8] After Preliminary Hearing held on April 6, 1996, Appellant was bound over on the charge as amended. Appellant argues in his fourth proposition that the State should not have been allowed to reinstate the dismissed charge by simply re-filing it as an alternative count and bringing it before a magistrate at a second preliminary hearing. He further contends that the State lacked subject matter jurisdiction over the reinstated charge.

¶ 26 It has been widely recognized that the district court is a court of general jurisdiction, constitutionally endowed with unlimited original jurisdiction of all justiciable matters except as otherwise provided in Article 7, Section 7, of the Oklahoma Constitution. *Buis v. State*, 1990 OK CR 28, 792 P.2d 427, 428–29. This Court has held that, "a trial court's jurisdiction is triggered by the filing of an Information alleging the commission of a public offense with appropriate venue." *Parker v. State*, 1996 OK CR 19, 917 P.2d 980, 985, *cert. denied*, — U.S. ——, 117 S.Ct. 777, 136 L.Ed.2d 721 (1997). *See also* 22 O.S.1991, §§ 121–136. In light of the foregoing, it appears that the Coal County

---

7. Original Record, 45.

8. Original Record, 290–91.

District Court did not have subject matter jurisdiction to try Appellant for the crime of First Degree Malice Murder as it had already been correctly determined that venue for this crime did not lie in that county.

¶ 27  Had Appellant's First Degree Murder conviction for the death of Melissa Moody been based solely upon the jury's finding that he had killed her with malice aforethought, relief would have been warranted upon a finding that the trial court lacked subject matter jurisdiction over Appellant.  However, Appellant was charged alternatively with having committed the crime of First Degree Felony Murder and the jury found Appellant guilty of this crime as well as First Degree Malice Murder.[9] Because the trial court did have subject matter jurisdiction over Appellant for the crime of First Degree Felony Murder, we find that the error which occurred when the State improperly recharged Appellant with First Degree Malice Murder is harmless and relief is not warranted.

■ ¶ 28  The State charged Appellant in Count II with the crime of First Degree Felony Murder, with Kidnapping as the underlying felony.  The Information specifically alleged that Appellant inveigled and kidnapped Melissa Moody by guile and deceit to be transported from Coal County to Choctaw County and that he effected the kidnapping by use of false statements wherein he told Melissa that he was taking her to her mother.  It also alleged that Appellant had the intent to secretly confine or imprison Melissa against her will.[10]  Appellant argues in his fifth proposition that the evidence presented at trial was insufficient to support the felony murder conviction because the State did not prove each element of the underlying felony, namely that Appellant had the intent to confine or imprison Melissa against her will. Appellant contends that the State's evidence shows that his intent in taking Melissa to Choctaw County was to kill her, not to confine or imprison her.  He also contends that the evidence does not show that Melissa was being held against her will during her trip to Choctaw County.

¶ 29  We find that while Appellant may have taken Melissa from Coal County to Choctaw County with the intent to kill her once there, the evidence was sufficient to prove that he had the intent to confine and imprison Melissa both before and during the trip to Choctaw County.  Further, in light of the fact that Melissa was a child of either ten or eleven years of age, we decline to find merit in Appellant's argument that Melissa was not held against her will.  As the State correctly responds, this Court has held that a child of tender years is incapable of consenting to his or her seizure and abduction.  See *Rojem v. State*, 1988 OK CR 57, 753 P.2d 359, 363, *cert. denied*, 488 U.S. 900, 109 S.Ct. 249, 102 L.Ed.2d 238 (1988).  Accordingly, we find that the evidence presented at trial was sufficient to prove beyond a reasonable doubt that Appellant was guilty of each element of the crime of Kidnapping.  See *Spuehler v. State*, 1985 OK CR 132, 709 P.2d 202.

■ ¶ 30  Several items taken from Appellant's home, including three small notebooks and two sets of hand cuffs, were introduced into evidence at trial.  In his sixth proposition, Appellant asserts that these items were improperly admitted because they were seized in violation of his federal and state constitutional rights.  Appellant notes that the items were taken by the police who searched without a warrant and without his consent.  Appellant acknowledges that Juanita Cummings, who lived in the residence with him at the time of the search, consented to the search.  However, he argues that Juanita's consent to search was insufficient as the State did not prove that she had authority to consent to the search of the area in the home where the items at issue were found.

■ ¶ 31  The Fourth Amendment's prohibition against warrantless entry of a person's home does not apply to situations where voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises.  *Il-*

---

9. Original Record, 408.

10. Original Record, 290.

*linois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974); *Smith v. State*, 1979 OK CR 142, 604 P.2d 139. The mutual use of property, or joint access or control of property, is held to be generally sufficient to confer authority to consent to a search of the premises. *Reeves v. State*, 1991 OK CR 101, 818 P.2d 495, 503. However, even if the third party does not possess actual authority to consent, the warrantless search may still be justified if the authorities have reason to believe the consenting third party has authority. *Id.*

¶ 32 In the present case, it is clear from the record that Juanita Cummings shared common authority over the premises searched with Appellant and Sherry Cummings. The three of them lived in the house together with their children. The items at issue were found in an unlocked trunk or drawer in the bedroom shared by Appellant and his two wives. Further, in addition to the notebooks and hand cuffs, the searching officer noticed family photos and papers in the trunk or drawer. Even if Appellant had exclusive use of the drawer or trunk where the items were located, the nature of these items provided the searching officer with reason to believe that Juanita Cummings had joint access to the area searched. Accordingly, the notebooks and hand cuffs were properly seized in accordance with the mandates of the federal and state constitutions. This proposition is without merit.

¶ 33 Appellant complains in his seventh proposition that he was deprived of his constitutional right to a fair trial by the State's introduction of evidence which was either entirely irrelevant or which was more prejudicial than probative, and therefore should not have been admitted. 12 O.S.1991, §§ 2401–03. Specifically, Appellant first complains that gruesome photographs depicting the remains of Judy Mayo and Melissa Moody should not have been admitted into evidence.

¶ 34 The test for admissibility of photographs is not whether they are gruesome or inflammatory, but whether their probative value is substantially outweighed by the danger of unfair prejudice. *Hooks v. State*, 1993 OK CR 41, 862 P.2d 1273, 1280, cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994). Whether to introduce photographs of a homicide victim is a decision largely within the trial court's discretion and this decision will not be disturbed absent an abuse of discretion. *Id.* This Court has held that photographs depicting murder victims can be probative by showing the nature, extent and location of wounds, depicting the crime scene and corroborating a medical examiner's testimony. *Smallwood v. State*, 1995 OK CR 60, 907 P.2d 217, 228, cert. denied, —— U.S. ——, 117 S.Ct. 431, 136 L.Ed.2d 330 (1996).

¶ 35 The photographs of Judy and Melissa introduced in the present case are gruesome. However, they also accurately depict the crime scene and corroborate the testimony of the medical examiner. We find that this probative value is not substantially outweighed by the prejudicial impact. Accordingly, we cannot find that the trial court abused its discretion in admitting these photographs into evidence.

¶ 36 Appellant also complains of several other photographs introduced at trial, including pictures of the blanket and quilt used to cover Judy Mayo's body, pictures of the clothes found, and pictures of the bridge leading to Lake Atoka, Judy Mayo's truck and a tire impression near where the body was found. While we agree that some of these photographs were cumulative to evidence introduced at trial, we do not find that their prejudicial impact outweighs their probative value. The admission of these photographs does not amount to error which requires relief.

¶ 37 It is also Appellant's contention that error occurred when the State introduced into evidence twine friendship bracelets found on Melissa's skeletonized wrist in addition to a picture which showed the bracelets on the child's skeletonized wrist. The friendship bracelets were probative to the identity of the skeletal remains. Admission of both a photograph and the actual twine bracelets was cumulative. However, we do not find that the admission of this

evidence requires reversal. *See Al–Mosawi v. State,* 1996 OK CR 59, 929 P.2d 270, 284, *cert. denied,* —— U.S. ——, 118 S.Ct. 145, 139 L.Ed.2d 92 (1997).

¶ 38 Appellant contends that the admission of a receipt indicating that he had traded a .22 rifle for a .38 Special on June 5, 1990 was error as this evidence was not relevant because this particular gun was never established as the murder weapon. Because Juanita had admitted to using a gun kept at the house to kill Judy Mayo, the particulars regarding ownership of the gun were not in issue. Even so, we cannot find that the admission of this evidence affected the verdict in this case. This error was harmless.

¶ 39 Finally, Appellant argues that the hand cuffs and notebooks were admitted in error as they were irrelevant. Both Sherry and Juanita had testified about their use of the hand cuffs on Melissa prior to when she was killed. They also testified that Appellant kept notebooks in which he wrote down what they had told the police. These items of evidence were relevant as they were the subject of trial testimony. Further, the probative effect of this evidence outweighed its prejudicial effect. This is true especially in light of the fact that there was very little information in the notebooks which was prejudicial to Appellant. This argument warrants no relief.

¶ 40 In his eighth proposition Appellant argues that the trial court erred in declining to give the jury his requested instruction on the offense of accessory after the fact. Appellant acknowledges that this Court has in the past held that, "being an accessory to a felony is a separate substantive offense, and is not a lesser offense included within the felony." *VanWoundenberg v. State,* 1986 OK CR 81, 720 P.2d 328, 335, *cert. denied,* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986). *See also Williams v. State,* 1980 OK CR 91, 620 P.2d 421, 422. Accordingly, we have held that instructions on accessory after the fact are not appropriate. *Id.* However, Appellant requests this Court reconsider this holding in capital cases in light of the United States Supreme Court's ruling in *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

¶ 41 In *Beck* the defendant was charged with the capital crime of robbery-intentional killing. The jury was given the option of either convicting the defendant and imposing the death penalty or of acquitting him. On appeal the defendant argued that the jury should have been instructed on the lesser included offense of felony murder which was warranted by the evidence and would have allowed the jury to convict him and choose between the penalties of death, life or life without the possibility of parole. The Supreme Court held that a death sentence cannot be constitutionally upheld after a jury verdict of a capital offense when the jury was not permitted to consider a verdict of a lesser included non-capital offense. *Id,* 447 U.S. at 626, 100 S.Ct. at 2384.

¶ 42 This ruling is inapposite to the present case for two reasons. First, as we have already noted, accessory after the fact is a separate substantive crime than first degree murder. It is not a lesser included crime. Second, upon conviction for the crime of first degree murder under Oklahoma law one is not automatically assessed the death penalty as was the case in *Beck.* Rather, the jury is given the opportunity to choose between three penalty options; life, life without the possibility of parole and death. Accordingly, we find Appellant's argument unpersuasive and hold that the trial court did not err in refusing to give the requested instruction on accessory after the fact.

## ISSUES AFFECTING BOTH STAGES OF TRIAL

¶ 43 Appellant complains in his ninth proposition that numerous instances of prosecutorial misconduct deprived him of a fair trial and reliable sentencing proceeding. He first argues that the prosecutor argued facts not in evidence during both stages of trial in order to explain to the jury why Melissa's clothing was found at the same location as her mother's clothing. He also complains that the prosecutor improperly referred to evidence that Appellant had raped Melissa after the trial court had dismissed Count III, the rape charge, at the end of the

first stage of trial. Finally, Appellant contends that the prosecution unnecessary ridiculed him. All but a couple of the comments complained of were not objected to at trial. Accordingly, as to these remarks, all but plain error has been waived. *Freeman v. State*, 1994 OK CR 37, 876 P.2d 283, 287, *cert. denied*, 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994).

¶ 44 Our review of the record reveals that of the many comments which were not met with timely objection, none can be deemed plain error. Also, of the few comments which were objected to, none were so egregious as to require reversal. "Allegations of prosecutorial misconduct do not warrant reversal of a conviction unless the cumulative effect was such to deprive the defendant of a fair trial." *Duckett v. State*, 1995 OK CR 61, 919 P.2d 7, 19. Because we do not find that inappropriate comments deprived Appellant of a fair trial, affecting the jury's finding of guilt or assessment of the death penalty, we decline to grant relief on this proposition.

¶ 45 Appellant argues in his tenth proposition that trial counsel made several errors during both stages of trial which denied him effective assistance of counsel. To show ineffective assistance of counsel, a defendant must meet the two-pronged test set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First he must show that defense counsel's performance was deficient. This requires a showing that counsel made errors so egregious that he was not functioning as the counsel guaranteed by the Sixth Amendment. Second, he must show he was prejudiced by the deficient performance; that counsel's errors deprived him of a fair trial with a reliable outcome. *Id.* 466 U.S. at 687, 104 S.Ct. at 2064. "Any showing that the outcome would have been different is sufficient." *Duckett*, 919 P.2d at 14.

¶ 46 It is first alleged that trial counsel was ineffective because he failed to investigate and use available evidence concerning Appellant's personality and character that was inconsistent with the State's theory of guilt and its justification for a death sentence. Appellant contends that the State's theory of the case was that he was a brutal, manipulative person who exercised such complete control over adult women that he could order them to commit and assist in murder and rape. He contends that defense counsel was ineffective for failing to put on character and psychological evidence which would have countered the prosecution's portrayal of his domineering personality and interpersonal skills. Appellant has filed an application for an evidentiary hearing regarding the issue of whether trial counsel was ineffective for failing to utilize this available evidence.

¶ 47 Appellant requests this evidentiary hearing based upon Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (1997). This rule allows an appellant to request an evidentiary hearing when it is alleged on appeal that trial counsel was ineffective for failing to "utilize available evidence or adequately investigate to identify evidence which could have been made available during the course of the trial...." Once an application has been properly submitted along with supporting affidavits, this Court reviews the application to see if it contains "sufficient evidence to show this Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence." Rule 3.11(B)(3)(b)(i), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (1997).

¶ 48 Upon review of the application and supporting affidavits we find Appellant has shown this Court that trial counsel could well have utilized this information at trial and that it may have been prudent for him to do so. However, Appellant has not shown by clear and convincing evidence a strong possibility that defense counsel was ineffective for failing to utilize or identify the complained-of evidence. Accordingly, we decline to grant Appellant's application for an evidentiary hearing.

¶ 49 Appellant also alleges that trial counsel was ineffective because he failed to object to the prosecution's improper argument and improper references to the alleged rape of Melissa Moody after the trial court

had dismissed the child abuse/rape charges. We agree that defense counsel would have been well advised to object to the prosecutor's speculation about how Melissa's clothes came to be found in the lake with her mother's clothes. We also agree that defense counsel should have objected to the prosecutor's references to the alleged rape in first stage closing argument and during the second stage of trial. However, we do not find that these errors rendered counsel's performance deficient or that he was prejudiced by deficient performance. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Accordingly, we decline to grant relief on this allegation of error.

## SECOND STAGE ISSUES

¶ 50 Appellant argues in his eleventh proposition that the evidence was not sufficient to support the jury's finding that he killed Melissa Moody for the purpose of avoiding or preventing a lawful arrest or prosecution. The prosecution alleged two predicate crimes to this aggravating circumstance in the Bill of Particulars: that Appellant had killed Melissa to avoid prosecution for having raped her and to avoid prosecution for having killed her mother.[11] Appellant contends that because the trial court dismissed the child abuse charge, Count III, at the end of the first stage of trial, the State could not rely upon the first stage evidence that Appellant had abused and raped Melissa in order to argue that he killed her to avoid arrest of prosecution for the rape. We find merit to Appellant's argument that evidence of the dismissed charge should not have been used to support this aggravating circumstance. The trial court found as a matter of law that Appellant was not guilty of the crime of child abuse as charged[12] and accordingly, the alleged acts that the State relied upon to support this charge should not be used to support this aggravating circumstance. Similarly, because this Court found in Proposition II that the evidence was insufficient to support Appellant's conviction for killing Judy Mayo, it follows that the evidence must also be insufficient to support a

finding that Appellant killed Melissa Moody to avoid arrest or prosecution for this crime. Under these circumstances, Appellant's contention that the evidence was insufficient to support the jury's finding that he killed Melissa Moody to prevent lawful arrest or prosecution has merit. Accordingly, this aggravating circumstance must fail.

¶ 51 Appellant first contends in his twelfth proposition that his death sentence should be vacated because the "continuing threat" aggravating circumstance, as interpreted and applied in this case, created the risk of arbitrary and capricious imposition of the death penalty. Appellant acknowledges that this Court has consistently upheld the constitutionality of the "continuing threat to society" aggravating circumstance. *Duckett*, 919 P.2d at 26; *Knighton v. State*, 1996 OK CR 2, 912 P.2d 878, 895, *cert. denied*, —— U.S. ——, 117 S.Ct. 120, 136 L.Ed.2d 71 (1996); *Richie v. State*, 1995 OK CR 67, 908 P.2d 268, 278, *cert. denied*, —— U.S. ——, 117 S.Ct. 111, 136 L.Ed.2d 64 (1996); *Malone v. State*, 1994 OK CR 43, 876 P.2d 707, 715–16. However, he urges us to reconsider this ruling. We find the law is settled and Appellant has failed to give this Court any compelling reason to revisit this issue now.

¶ 52 Next, Appellant challenges the State's use of evidence of unadjudicated crimes to support the "continuing threat" aggravating circumstance. Specifically, Appellant complains that this aggravating circumstance was supported only by the uncorroborated testimony of Lohoma Yaws, Sherry Cummings' sister, that Appellant had raped her when she was fourteen years old. This crime was not reported to the police as Ms. Yaws testified that Appellant threatened to kill her and her mother if they told what had happened. Appellant contends that it is offensive to due process and to the prohibition against cruel and unusual punishments that he was sentenced to death on the basis of such unreliable evidence. Again, Appellant acknowledges that this Court has long allowed the use of unadjudicated crimes to support the "con-

---

11. Original Record, 316.

12. Trial Transcript IV, 855–56; Original Record, 388.

tinuing threat" aggravating circumstance. We have held that evidence relevant to the proof of this aggravating circumstance includes prior convictions, prior unadjudicated crimes and other acts which show a pattern of conduct that would indicate a propensity toward violence that likely would continue in the future. *See Johnson v. State,* 1996 OK CR 36, 928 P.2d 309, 317–18; *Charm v. State,* 1996 OK CR 40, 924 P.2d 754, 762–63, *cert. denied,* —— U.S. ——, 117 S.Ct. 1560, 137 L.Ed.2d 707 (1997); *Perry v. State,* 1995 OK CR 20, 893 P.2d 521, 536; *Malone,* 876 P.2d at 717. Accordingly, we find that the evidence used to support the "continuing threat" aggravating circumstance in the present case was appropriate and does not render Appellant's death sentence unconstitutional.

¶ 53 In his thirteenth proposition, Appellant contends his death sentence should be vacated because the State failed to provide pretrial notice of the testimony of Lahoma Yaws that would be introduced in support of the "continuing threat" aggravating circumstance. Notice by the prosecution to the defense of the evidence to be introduced in support of the aggravating circumstances is required by statute. 21 O.S.1991, § 701.10(C); *Walker v. State,* 1994 OK CR 66, 887 P.2d 301, 316–17, *cert. denied,* 516 U.S. 859, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995).

¶ 54 In the present case, the State simply indicated in the Bill of Particulars that evidence of the rape of Lahoma Yaws would be offered to support the alleged aggravating circumstances. It informed that this testimony would be provided by Ms. Yaws, Sherry and Juanita Cummings. Generally, this would not be deemed sufficient notice to allow the defense to know what to expect. However, as the State points out, Sherry Cummings had already testified in the preliminary hearing about Appellant's rape of her sister, Ms. Yaws. Accordingly, it can be found that Appellant knew of the nature of Ms. Yaws expected testimony regarding the

rape. He had ample information and time to present a defense or an explanation for the alleged conduct. This error is harmless.

¶ 55 Appellant requested the jury be instructed that the existence of a mitigating circumstance did not have to be proven beyond a reasonable doubt, but could be considered if there was any substantial evidence to support it.[13] The trial court declined to give Appellant's requested instruction and Appellant asserts in his fourteenth proposition that this ruling resulted in reversible error.

¶ 56 The record reflects that the jury was properly instructed that:

> If you unanimously find that one or more of the aggravating circumstance or circumstance(s) existed beyond a reasonable doubt, unless you also unanimously find that the aggravating circumstance or circumstance(s) outweigh the finding of one or more mitigating circumstances, the Death Penalty shall not be imposed.[14]

This Court has held repeatedly that this instruction accurately and adequately instructs the jury regarding the proper procedure for weighing aggravating circumstances against mitigating evidence. *Romano v. State,* 1995 OK CR 74, 909 P.2d 92, 124, *cert. denied,* —— U.S. ——, 117 S.Ct. 151, 136 L.Ed.2d 96 (1996); *Neill v. State,* 1994 OK CR 69, 896 P.2d 537, 557, *cert. denied,* 516 U.S. 1080, 116 S.Ct. 791, 133 L.Ed.2d 740 (1996). We are not now persuaded that these instructions created doubt as to the sentencer's constitutional duty to consider the mitigating circumstances. This proposition is without merit.

¶ 57 In his fifteenth proposition Appellant sets forth two arguments previously rejected in order to preserve them for appellate review. He first argues that the jury instructions were in error in that they failed to inform the jury that its findings regarding mitigating circumstances did not have to be unanimous. This Court has repeatedly rejected this argument and we do so

---

13. Although this type of instruction is presently sanctioned by the Oklahoma Uniform Jury Instructions, OUJI–CR2d 4–78, it was not in effect at the time of Appellant's trial.

14. Original Record, 466.

again. *See Bryan v. State,* 1997 OK CR 15, 935 P.2d 338, 364, *cert. denied,* —— U.S. ——, 118 S.Ct. 383, 139 L.Ed.2d 299 (1997); *Knighton,* 912 P.2d at 896 (and cases cited therein).

▮▮ ¶ 58  Appellant also complains that the instructions given to the jury on the issue of mitigation permitted the jurors to ignore mitigating evidence altogether and seriously diminished the effect of the mitigating evidence presented in the case. This Court has often held that the permissive language in this instruction reflects the correct constitutional standard and avoids any infringement on the jury's duty to determine individual punishment. *See Rogers v. State,* 1995 OK CR 8, 890 P.2d 959, 978, *cert. denied,* 516 U.S. 919, 116 S.Ct. 312, 133 L.Ed.2d 215 (1995); *Pickens v. State,* 1993 OK CR 15, 850 P.2d 328, 339, *cert. denied,* 510 U.S. 1100, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994). We decline to reconsider our prior decisions on this issue.

▮▮ ¶ 59  In his final proposition, Appellant contends the accumulation of errors in this case so infected the trial and sentencing proceedings that he was denied due process of law and a reliable sentencing proceeding in violation of his rights under the Fourteenth and Eighth Amendments. This Court has held that where there is no error present, there can be no accumulation of error. *Smith v. State,* 1996 OK CR 50, 932 P.2d 521, 538. However, when there have been numerous irregularities during the course of the trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors was to deny the defendant a fair trial. *Bechtel v. State,* 1987 OK CR 126, 738 P.2d 559, 561. Because the errors which occurred during the course of the present trial, even taken together, cannot be found to have been so great as to have denied Appellant a fair trial, relief is not warranted.

### REWEIGHING OF MITIGATING AND AGGRAVATING EVIDENCE

▮▮ ¶ 60  In Proposition XI, this Court found that there was insufficient evidence to support the jury's finding that Appellant killed Melissa Moody for the purpose of avoiding or preventing a lawful arrest or prosecution. When this Court invalidates an aggravating circumstance, and at least one valid aggravator remains, the Court may reweigh the mitigating evidence against the valid aggravating circumstances to determine whether the weight of the improper aggravator is harmless, and the sentence of death still valid. *Valdez v. State,* 1995 OK CR 18, 900 P.2d 363, 384, *cert. denied,* 516 U.S. 967, 116 S.Ct. 425, 133 L.Ed.2d 341 (1995). This Court may "reweigh aggravating circumstances on appeal, and may find an improper aggravator to be harmless error if, looking at the record, the court finds that the elimination of an improper aggravator cannot affect the balance beyond a reasonable doubt." *McGregor v. State,* 1994 OK CR 71, 885 P.2d 1366, 1385–86, *cert. denied,* 516 U.S. 827, 116 S.Ct. 95, 133 L.Ed.2d 50 (1995).

▮▮ ¶ 61  Having invalidated the aggravating circumstance that Appellant killed to avoid or prevent arrest or lawful prosecution, we now reweigh. The valid remaining aggravating circumstance is the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. The mitigating evidence includes the fact Appellant has been an exemplary prisoner while incarcerated, he has a family that loves and cares for him, there are others more morally culpable for these crimes, there is residual doubt as to Appellant's guilt, the Appellant has performed acts of kindness to friends and family, and the Appellant had an impoverished and deprived background.

¶ 62  After careful, independent review and consideration of the evidence in support of the valid aggravating circumstance and the evidence in mitigation, this Court finds the sentence of death is factually substantiated and appropriate.

### MANDATORY SENTENCE REVIEW

▮▮ ¶ 63  This Court is required to conduct a final analysis in all cases which impose the death penalty to determine (1) whether the sentence was imposed under the influence of passion, prejudice, or any other arbi-

trary factor, and (2) whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance. *See* 21 O.S.1991, § 701.13(C).

¶ 64 In the course of deciding this appeal and affirming the death sentence, we have specifically determined the sentence was not imposed under passion, prejudice, or any other arbitrary factor. We have also determined the evidence supports one of the two aggravating circumstances found by the sentencing jury. We have reweighed this valid aggravator against the mitigating evidence and determined the sentence of death is both appropriate and factually substantiated.

CHAPEL, P.J., LANE and JOHNSON, JJ., concur.

LUMPKIN, J., concurs in results.

LUMPKIN, Judge, concurs in results.

¶ 1 I concur in the result reached in this opinion and much of the Court's analysis. However, I write to address two points.

¶ 2 First, as I have stated numerous times before, when addressing ineffective assistance of counsel, we should not focus on whether Appellant has shown "the outcome would have been different". Rather, we must look at whether the verdict was reliable, i.e. "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell,* 506 U.S. 364, 369–370, 113 S.Ct. 838, 842–843, 122 L.Ed.2d 180 (1993). We should apply the *Strickland* test, as established by the United States Supreme Court, in accordance with that Court's further delineation of its applicability. In *Lockhart v. Fretwell,* the Court clearly stated a different outcome is not the legal criteria to use.

¶ 3 Secondly, I disagree with the notion that we cannot use Appellant's alleged rape of Melissa to support second stage aggravators. The rape should be treated in the same way we treat an unadjudicated offense. While I agree that the alleged rape, a crime of which Appellant was acquitted, could not be used as the predicate crime to support the aggravator of committing a murder for the purpose of avoiding or preventing a lawful arrest or prosecution, I believe the alleged rape could be used to support the continuing threat aggravator. A "verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *U.S. v. Watts,* 519 U.S. 148, 117 S.Ct. 633, 638, 136 L.Ed.2d 554 (1997). Here, the testimony from Juanita that a rape occurred, which was somewhat supported by the testimony of Sherry, together with the other facts of the case, is sufficient to prove the rape was committed by a preponderance of the evidence. The fact that Juanita and Sherry were possible accomplices to the crime of rape is irrelevant in the second stage because 22 O.S.1991, § 742 does not require corroboration of second stage accomplice testimony.